**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Stewart SPORLEDER,**
**Defendant–Appellant.**

**No. 80–1307.**

United States Court of Appeals,
Tenth Circuit.

Submitted Sept. 12, 1980.

Decided Dec. 15, 1980.

---

Bruce Stafford, Ruidoso, N. M., for defendant ·appellant.

R. E. Thompson, U. S. Atty., Larry Gomez, Asst. U. S. Atty., Albuquerque, N. M., for plaintiff ·appellee.

Before McKAY, LOGAN and SEYMOUR, Circuit Judges.

McKAY, Circuit Judge.

After examining the briefs and the appellate record, this three–judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. See Fed.R. App.P. 34(a); Tenth Cir.R. 10(e). The cause is therefore ordered submitted without oral argument.

Defendant was convicted of possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1). The only issue below and here involves a police seizure of methamphetamine from the defendant's person. DEA agents went to a building at 6212 and 6214 Second Street, N.W., Albuquerque, New Mexico, to execute a search warrant. According to a stipulation of facts entered into for the trial to the bench:

> The Defendant, STEWART A. SPORLEDER, was present during the execution of the federal warrant at 6212 Second Street, N.W. and 6214 Second Street, N.W. and during a pat down for weapons Detective Ray Ortiz of the Albuquerque Police Department Narcotics Division felt a metal object in the Defendant's front pocket and reached in the Defendant's pocket and retrieved a spark plug wrench and a baggie containing approximately one ounce of pure uncut methamphetmine [sic].

Record, vol. 1, at 43.

Defendant challenges the validity of the search warrant, the denial of an evidentiary hearing concerning the veracity of the search warrant affidavit, and the validity of the "patdown" and seizure.

## I.

The affidavit in support of the search warrant is a detailed account of the investigations leading to the request for the warrant. The four–page affidavit recites, among other things, the following facts. DEA agents, who were aware that an undercover DEA agent had purchased illegal drugs at the subject location two years earlier, received a tip from an undisclosed confidential informant who described in some detail how he had been delivering substantial quantities of phenyl–2–proponone (P–2–P) to named individuals at the location. The only common use of P–2–P is in the manufacture of methamphetamine and amphetamine. The informant described the location and appearance of the premises, including a 100-foot fake antenna used as a vent for chemical fumes and a false wall in the shop behind which the methamphetamine laboratory was located.

The affidavit also describes a tip from another confidential informant, who claimed to have been told by defendant that he was manufacturing methamphetamine in a fake radio shop at the subject location. This informant also indicated that defendant had previously used another methamphetamine laboratory located at 1607 Sanford, N.E., which had burned down earlier in the year. Pursuant to a search warrant for the burned down premises, officers had seized paraphernalia frequently used in methamphetamine laboratories and discovered traces of methamphetamine.

The affidavit recites that DEA agents obtained judicial authority to place a "beeper" in a cardboard box to be delivered to the subject premises. With the assistance of the supplier, a beeper was placed in a box labeled "Monomethylamine." DEA agents followed the beep to the subject location and to 5500 Fifth Street, N.W. Two persons on motorcycle were observed arriving at the subject premises and later at 5500 Fifth Street, N.W. A check with the New Mexico Department of Motor Vehicles revealed that one of the motorcycles was registered to defendant.

Based on this affidavit information and other details in the affidavit which make it a coherent whole, a search warrant was issued for a search of the subject premises.

In Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), the Supreme Court indicated that in issuing a search warrant based upon the hearsay observations of an informant,

> the magistrate must be informed of some of the underlying circumstances from

which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, . . . was "credible" or his information "reliable."

*Id.* at 114, 84 S.Ct. at 1514 (footnote omitted).

■ The affidavit amply satisfies the first prong of this test, since it adequately informs the magistrate of the circumstances underlying the informants' conclusions as to the existence of narcotics at the premises. The first informant stated that he himself had delivered precursor chemicals to the subject premises. The second informant stated that defendant had previously told the informant that defendant was manufacturing methamphetamine at the subject location. *See Spinelli v. United States,* 393 U.S. 410, 425, 89 S.Ct. 584, 593, 21 L.Ed.2d 637 (1969) (White, J., concurring); *United States v. Sultan,* 463 F.2d 1066, 1068 (2d Cir. 1972).

The only question meriting discussion is whether the affidavit satisfies the second prong of the *Aguilar* test, *i. e.,* whether it sets forth the circumstances underlying the officer's conclusion that the informants were credible or their information reliable. The affidavit does not reveal the identity of the informants or whether they had previously proven to be reliable.

■ A previous track record of reliability is not the only means whereby an informant's trustworthiness can be established. It can also be established by an independent police investigation which corroborates the informant's tip. *Mapp v. Warden,* 531 F.2d 1167, 1171 (2d Cir. 1976); *United States v. Rollins,* 522 F.2d 160, 164–65 (2d Cir. 1975); *United States v. Sultan,* 463 F.2d 1066, 1069 (2d Cir. 1972).

■ In this case, independent investigations by law enforcement officers corroborated the information provided by the confidential informants. The information regarding the methamphetamine laboratory located at 1607 Sanford was corroborated by a prior investigation. Other investigative efforts gave law enforcement officers reason to believe that defendant was involved in the manufacturing of controlled substances at the locations mentioned in the affidavits. Officers had obtained court authorization to place a "beeper" in an order of methylamine, an immediate precursor chemical used in the manufacture of methamphetamine. Surveillance by law enforcement officers showed that the order of methylamine was picked up from a chemical company and taken in a van to the subject premises. Two individuals on motorcycles then arrived, and the individuals entered the subject premises through the door where the van with the methylamine had entered. The individuals on the motorcycles later followed the van with the methylamine to 5500 Fifth Street, N.W. A registration check revealed that defendant was the registered owner of one of the motorcycles. The above facts, all recited in the affidavit, corroborate the informants' tips that those locations were used or had been used in the illegal manufacture of methamphetamine.

■ The first informant's credibility is enhanced by another means as well. As part of the information he disclosed, the first informant made statements against his penal interest, and this adds to his credibility regarding the information disclosed. *United States v. Harris,* 403 U.S. 573, 583–89, 91 S.Ct. 2075, 2081–85, 29 L.Ed.2d 723 (1971) (plurality opinion). The first informant effectively admitted that he was an accomplice to the crime of manufacturing controlled substances, since he knew the chemicals he was delivering were used in the illicit manufacture of methamphetamine.

The magistrate must have a "substantial basis" for crediting the hearsay. *United States v. Harris,* 403 U.S. at 581, 91 S.Ct. at 2081 (plurality opinion). The above factors lead to the conclusion that the affidavit here was sufficient for the magistrate to conclude that the informants were reliable.

Therefore, since the affidavit satisfied both prongs of *Aguilar* and established

probable cause, the magistrate was justified in issuing the search warrant.

## II.

■ Defendant claims he was improperly denied an opportunity to challenge the veracity of the affidavit supporting the search warrant. However, defendant failed to make an adequate preliminary showing to trigger a further evidentiary hearing. *See Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978); *United States v. Rios*, 611 F.2d 1335, 1347–48 (10th Cir. 1979). He was given an opportunity to present fully to the district court his basis for seeking such a hearing. His proof and offers of proof did not raise a prima facie showing that the affidavits were false in any material way.

## III.

■ Our determination that the search warrant was valid only justifies a search of the premises at 6212 and 6214 Second Street, N.W. The warrant does not authorize the search of defendant or any other person. The search warrant and its supporting affidavit are directed only to "premises." Consequently, the methamphetamine discovered on defendant's person should have been suppressed unless the warrantless search [1] that produced it comes within one of the "few specifically established and well–delineated exceptions" to "the most basic constitutional rule in this area ... that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment.'" *Coolidge v. New Hampshire*, 403 U.S. 443, 454–55, 91 S.Ct. 2022, 2031–32, 29 L.Ed.2d 564 (1971) (quoting *Katz v. United States*,

389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967)).

The search at issue here is like the search challenged in *Ybarra v. Illinois*, 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979). In *Ybarra*, as here, investigating officers obtained a valid warrant to search a *place* –in that case, a tavern. The warrant also authorized the search of a person in that place–one "Greg." The officers did not have a warrant to search Ybarra, who was present in the tavern during the search. The Supreme Court stated that Ybarra's "constitutional protection against an unreasonable search or an unreasonable seizure ... was separate and distinct from the Fourth and Fourteenth Amendment protection possessed by the proprietor of the tavern or by 'Greg.'" 444 U.S. at 91–92, 100 S.Ct. at 342. This means that the probable cause that supported the issuance of the warrant to search the premises in this case does not, without more, support the search of defendant.

■ The government argues that because defendant supported his motion to suppress only with objections to the search warrant he cannot now rely on other grounds. The government misconstrues its burden. Evidence seized pursuant to a warrantless search, once questioned,[2] *must* be suppressed unless the search and seizure come within an exception to the Fourth Amendment requirement of a warrant. "[T]he burden is on those seeking the exemption to show the need for it." *Coolidge v. New Hampshire*, 403 U.S. 443, 455, 91 S.Ct. 2022, 2032, 29 L.Ed.2d 564 (1971) (quoting *United States v. Jeffers*, 342 U.S. 48, 51, 72 S.Ct. 93, 95, 96 L.Ed. 59 (1958)).

---

1. "[I]t is nothing less than sheer torture of the English language to suggest that a careful exploration of the outer surfaces of a person's clothing all over his or her body in an attempt to find weapons is not a 'search.'" *Terry v. Ohio*, 392 U.S. 1, 16, 88 S.Ct. 1868, 1877, 20 L.Ed.2d 889 (1968).

2. Defendant's motion to suppress attacked the search warrant, Record, vol. 1, at 14, and the government's response argued only that the search warrant was valid, *id.* at 24–29. At the

suppression hearing, however, the government chose to justify the search of defendant's person on the ground that "it was a pat–down." *Id.* vol. 2, at 24. When the government shifted its justification for the search of defendant's person from the warrant to an exception to the warrant requirement, the issue shifted with it. The issue of the legality of the warrantless search was therefore before the lower court and has been properly preserved for review.

The only justification the government offers for the warrantless search in this case is that it was a constitutionally permissible patdown search for weapons. *See Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1967). *Ybarra* makes clear that to come within the *Terry* exception the officers must show that their patdown was "supported by a reasonable belief that [defendant] was armed and presently dangerous, a belief which . . . must form the predicate to a patdown of a person for weapons." 444 U.S. at 92–93, 100 S.Ct. at 343 (footnote omitted). Also, "[n]othing in *Terry* can be understood to allow a generalized 'cursory search for weapons' or, indeed, any search whatever for anything but weapons." *Id.* at 93–94, 100 S.Ct. at 343–344. Thus, the government must show that the officers searching 6212 and 6214 Second Street, N.W., had a reasonable belief that defendant was armed and presently dangerous. Except as it may relate to an officer's reasonable belief that a person is armed and presently dangerous, it is of no consequence that that person is an object of the government's suspicion that led to the search of the premises.

The record reveals no evidence that the government even attempted to satisfy the burden imposed by *Terry* and *Ybarra*. The government made no showing whatsoever that the searching officers had a reasonable belief that defendant was armed and presently dangerous. In its brief the government seeks to satisfy *Terry* (*Ybarra* is not cited) by pointing to the fact that *during* the patdown "the detective *felt* a metal object in the defendant's pocket." Brief for Appellee at 13 (emphasis added). This argument seriously misinterprets *Terry*. The reasonable belief required by *Terry* "must form the predicate to," *Ybarra v. Illinois*, 444 U.S. at 93, 100 S.Ct. at 343, rather than be the product of the patdown search.

In short, the requirements of *Ybarra* and *Terry* were not focused upon below, and we have no record of whether the investigating officers were in fact justified in patting down defendant. The government has thus failed to show why the evidence obtained in that search should not have been suppressed.

For these reasons we conclude that the government failed to carry its burden of showing that the search of defendant and the seizure of the methamphetamine in his pocket satisfied the Fourth and Fourteenth Amendments.

REVERSED AND REMANDED.