**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Thomas Fred WARD,**
**Defendant-Appellant.**

**No. 81–1164.**

United States Court of Appeals,
Tenth Circuit.

July 6, 1982.

Rehearing Denied Oct. 6, 1982.

David Lee, Asst. U. S. Atty., Oklahoma City, Okl. (David L. Russell, U. S. Atty., and John R. Osgood, Asst. U. S. Atty., Oklahoma City, Okl., on the brief), for plaintiff-appellee.

W. Rodney DeVilliers, Sr. of DeVilliers, DeVilliers & Sugarman, Inc., Oklahoma City, Okl., for defendant-appellant.

Before McWILLIAMS, BARRETT and McKAY, Circuit Judges.

BARRETT, Circuit Judge.

Thomas Fred Ward (Ward) appeals his jury conviction and related judgment for failure to purchase a wagering stamp in violation of 26 U.S.C.A. § 7203. A review of the Government's undercover investigation of Ward and related search of his residence will facilitate our review.[1]

During 1978 Billy Jack Henry (Henry), a special agent with the Internal Revenue Service, was conducting an undercover investigation of gambling activities in and about the Lawton, Oklahoma, area. In the course of his investigation, Henry, who had known Ward since 1967, met with Ward on October 16, 1978 and placed a wager with him. This occurred after Ward acknowledged that he was still in the bookmaking business. Ward gave Henry a business card with his telephone number listed thereon to be used for placing additional bets.

On October 20, 1978, after collecting his winnings from the October 16, 1978 wager, Henry obtained a search warrant for Ward's residence in Lawton. Within his affidavit filed in support of his request for a search warrant, Henry deposed, *inter alia*, that: he had known Ward since 1967; Ward was known to him as a gambler and

---

1. Included within our development of the relevant background facts are facts set forth in the August 19, 1980 suppression hearing of a related civil forfeiture proceeding initiated by the United States against Ward which was judicially noticed and by reference incorporated herein by the district court at the request of Ward's counsel.

bookmaker who accepted wagers on sporting events; on September 20, 1978 and during the week of October 15, 1978 he had received information from two confidential sources who had been placing bets with Ward by calling telephone number 355–3661 in Lawton; during an October 16, 1978 meeting with Ward, Henry had placed a bet with Ward and Ward gave Henry his bookmaking number as 355–3661, Lawton; the records of Southwestern Bell Telephone Company show the subscriber of telephone number 355–3661 to be Tom Ward, 1910 Irvin, Lawton; a check of Internal Revenue Service records failed to disclose that Ward had filed a special tax return for wagering or that Ward had obtained a wagering stamp.

Judge Thompson executed a search warrant on October 20, 1978, authorizing a search of Ward's residence for "wagering paraphernalia consisting of books and records, money, bet slips, football schedules, line sheets, settlement sheets . . ."[2] Agent Henry and three fellow Internal Revenue agents proceeded to Ward's residence armed with the search warrant the next day. After entering Ward's residence, Henry advised Ward of his right to decline to answer any questions and his right to have a lawyer present. Henry then "patted" Ward down for weapons and inquired if he was armed. When Ward acknowledged that he never carried a gun but that he did carry a pocket knife, Henry requested that Ward empty his pockets and place the contents on a table. While emptying his pockets Ward produced, in addition to the pocket knife, $499 from his left front pocket, $220.78 from his right front pocket, a billfold, several betting slips and uncashed checks. When questioned by Henry, Ward acknowledged that the uncashed checks were bad checks he had received from betters. Henry subsequently seized the betting slips, uncashed checks, and $499 from Ward after Ward related that he could not remember where the $499 came from. The remaining $220.78 was returned to Ward after he explained how it came into his possession, unrelated to gaming.

During the course of the search of Ward's residence, Henry and the other agents who accompanied him located and seized additional gambling paraphernalia including books and records, schedules, line sheets, and settlement sheets. Henry answered Ward's phone numerous times while on the premises, using the alias of "Jack Lawson". Henry advised callers that he was helping Ward cut. As a result of one such conversation, Henry induced Kenneth Josey (Josey) to stop by Ward's residence where Henry seized $3,290 which Josey delivered to the residence in payment of a gambling debt owed Ward.

Prior to trial, Ward moved to suppress all the evidence seized during the course of the search of his residence and person. In support of his motion, Ward alleged that: the search warrant was not supported by a sufficient affidavit; the warrant was issued for a search of the premises only; and, the search and seizure of items from his person was improper.

In denying Ward's motion to suppress, the district court found, *inter alia*: the affidavit was sufficient to support a finding of probable cause for the issuance of the search warrant; the warrant, as issued, was valid and the search conducted pursuant thereto lawful; the $3,290 voluntarily delivered by Josey to Henry was admissible; the $499 seized from Ward was discovered pursuant to a constitutionally reasonable search and was, accordingly, admissible; and the uncashed checks and betting slips which Ward voluntarily removed from his billfold were admissible inasmuch as the billfold was discovered pursuant to a valid search and Ward had voluntarily revealed the contents thereof.

Ward's trial commenced on November 10, 1980. On November 13, 1980, the district court declared a mistrial after the jury was

---

**2.** The search warrant, as issued, was limited exclusively to Ward's residence, even though, as originally prepared, it would have also authorized a search of Ward's person. However (and unexplained in the record before us) typed language on the face of the warrant authorizing a search "on the person of" was *deleted* from the warrant as issued.

unable to reach a verdict. A second trial commenced on December 8, 1980. The jury returned a verdict of guilty on December 9, 1980.

On appeal Ward contends that the trial court erred in: (1) admitting in evidence items seized from him during the course of the search of his residence in violation of his Fourth Amendment rights; (2) admitting in evidence the $3,290 seized from Josey; (3) admitting in evidence items seized from his person in violation of his Fourth and Sixth Amendment rights; (4) requiring that he proceed to trial a second time less than four weeks after his first trial and at a time when he could not obtain a copy of the transcript of the first trial; and (5) improperly furnishing exhibits to the jury which, although received in evidence during the first trial, were not offered or received in evidence during the second trial.

### I.

Ward contends, by consolidating his first three allegations of error, that the seizure of money, checks and betting slips from his person together with the seizure of $3,290.00 from Josey was the result of a warrantless and unreasonable search. Ward argues the evidence so obtained should have been suppressed prior to trial.

### A.

Ward contends that the search warrant was limited to his premises and that the agents "exceeded the authority conferred by the warrant itself" in the search of his person. The Government argues that the initial search of Ward, *i.e.*, patting him down and being informed that he carried a pocket knife, resulting in the request that he empty his pockets, was fully justified under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Henry related the events surrounding the actions of the agents undertaken pursuant to the search warrant as follows:

Q   Okay Federal Officer, Federal Search Warrant. And he let you in the house?

A   Yes.

Q   He didn't offer any resistance?

A   That's right.

Q   Do you even tell him he was under arrest?

A   No, sir.

Q   As a matter of fact, he was not placed under arrest, was he?

A   That's correct.

Q   Now, you said you patted him down.

A   Yes.

Q   You put [sic] him ___ How did you do that?

A   I just turned him around, patted him down in the normal manner. I didn't put him against the wall.

Q   All right. In the course of patting him down, you didn't discover anything that led you to believe he was carrying a weapon or anything else out of the ordinary in his pocket or on his person?

A   Other than the—what he had in his pocket, it was bulgy. I didn't know what it was.

Q   It was bulgy. Well, you didn't observe any gambling going on there, did you, at 1910 Irwin, on the 21st of October, in Lawton?

A   No, sir. Only gambling paraphernalia.

*    *    *    *    *    *

Q   But you say you patted him down?

A   Yes, I did.

Q   And, turned him around?

A   Yes, I did.

Q   Then he had reason to believe he was arrested, didn't he?

A   I have no knowledge of what was in his mind. I did it for several reasons, as a routine precaution.

[Tr. August 19, 1980 civil suppression hearing at pp. 32–33 and 35].

Within its order denying Ward's motion to dismiss and upholding Henry's search of Ward, the district court found:

... Upon entering the premises for the purpose of executing the search warrant,

the agents read the defendant his rights and patted him down for weapons. Agent Henry then asked defendant Ward if he was armed and the defendant responded that he never carried a gun, however, he did state that he had a knife.... In response to this information that the defendant was armed, Agent Henry directed the defendant to empty his pockets on a table. Among the items placed on the table were defendant's billfold and the $499.00.... In *Terry v. Ohio, supra,* the Court stated that "The scope of the search must be 'strictly tied to' and justified by 'the circumstances which rendered its initiation permissible.'" The question presented here is whether Agent Henry was justified in expanding the scope of the search from a superficial pat-down search for weapons to a more intensive search of the person. In this case, the Court finds that Agent Henry had sufficient grounds to expand the scope of the search for the reason that he had already conducted a superficial search pursuant [to] *Terry* and was then advised by the defendant that the defendant was armed. The Court cannot say that Agent Henry acted unreasonably or inappropriately in light of the totality of facts then available to him. [R., Vol. I at pp. 42–43].

It is uncontested that at the time Henry and the other agents conducted the search that: (1) Ward invited them into his residence without resistance; (2) upon entering the residence, Henry advised Ward of his non-custodial rights and patted Ward down as a routine precaution during the course of which he observed something bulgy in Ward's pocket; (3) after patting Ward down and being informed that he carried a pocket knife, Henry directed Ward to empty his pockets; (4) Ward did not resist the search; (5) Ward did not attempt to destroy anything or hinder the agents' search; and, (6) Ward was not arrested before, during, or after the search.

In light of the specific facts and circumstances of this record, we must hold that the initial patdown search of Ward did not constitute a reasonable frisk for weapons under *Terry,* and, accordingly, the second search of Ward, *i.e.,* that which resulted in disclosure of evidence obtained from Ward's pockets pursuant to Henry's request, does not pass constitutional muster under the Fourth Amendment.

■ Although Agent Henry had probable cause to believe that Ward was committing a federal offense by engaging in bookmaking without first acquiring a wagering stamp, the initial frisk of Ward was not supported by a reasonable suspicion that he was armed and presently dangerous. Accordingly, and inasmuch as Ward was not arrested, the seizure of the contents of his pockets, including the uncashed checks, betting slips, and $499 was not constitutionally permissible. This holding is dictated by *Ybarra v. Illinois,* 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979). The Supreme Court there opined:

Notwithstanding the absence of probable cause to search Ybarra, the State argues that the action of the police in searching him and seizing what was found in his pocket was nonetheless constitutionally permissible. We are asked to find that the first patdown search of Ybarra constituted a reasonable frisk for weapons under the doctrine of *Terry v. Ohio,* 392 U.S. 1 [88 S.Ct. 1868, 20 L.Ed.2d 889]. If this finding is made, it is then possible to conclude, the State argues, that the second search of Ybarra was constitutionally justified. The argument is that the patdown yielded probable cause to believe that Ybarra was carrying narcotics, and that this probable cause constitutionally supported the second search, no warrant being required in light of the exigencies of the situation coupled with the ease with which Ybarra could have disposed of the illegal substance.

*We are unable to take even the first step required by this argument. The initial frisk of Ybarra was simply not supported by a reasonable belief that he was armed and presently dangerous, a belief which this Court has invariably held must form the predicate to a patdown of a*

*person for weapons.*[5] *Adams v. Williams,* 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612; *Terry v. Ohio, supra,* at 21–24, 27, 88 S.Ct. at 1879–1881, 1883.

\* \* \* \* \* \*

[5] Since we conclude that the initial patdown of Ybarra was not justified under the Fourth and Fourteenth Amendments, we need not decide whether or not the presence on Ybarra's person of "a cigarette pack with objects in it" yielded probable cause to believe that Ybarra was carrying any illegal substance.

444 U.S. at pp. 92–93, 100 S.Ct. at pp. 342–343. [Emphasis supplied].

We recently applied and interpreted *Ybarra, supra,* in *United States v. Sporleder,* 635 F.2d 809 (10th Cir. 1980). We there held:

The only justification the government offers for the warrantless search in this case is that it was a constitutionally permissible patdown search for weapons. *See Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1967). *Ybarra* makes clear that to come within the *Terry* exception the officers must show that their patdown was "supported by a reasonable belief that [defendant] was armed and presently dangerous, a belief which ... must form the predicate to a patdown of a person for weapons." 444 U.S. at 92–93, 100 S.Ct. at 343 (footnote omitted). Also, "[n]othing in *Terry* can be understood to allow a generalized 'cursory search for weapons' or, indeed, any search whatever for anything but weapons." *Id.* at 93–94, 100 S.Ct. at 343–344. Thus, the government must show that the officers searching 6212 and 6214 Second Street, N.W., had a reasonable belief that defendant was armed and presently dangerous. Except as it may relate to an officer's reasonable belief that a person is armed and presently dangerous, it is of no consequence that that person is an object of the government's suspicion that led to the search of the premises.

635 F.2d at p. 814.

Nothing in the record before us indicates that Henry believed that Ward was "armed and presently dangerous" at the time he conducted the search of Ward's residence.

Thus, the initial frisk search of Ward and the resulting second search were not constitutionally permissible. *See also: United States v. Corona,* 661 F.2d 805 (9th Cir. 1981); *United States v. Clay,* 640 F.2d 157 (8th Cir. 1981); *United States v. Cole,* 628 F.2d 897 (5th Cir. 1980), *cert. denied,* 450 U.S. 1043, 101 S.Ct. 1763, 68 L.Ed.2d 241 (1981). We thus hold that the evidence so seized was violative of Ward's rights under the Fourth Amendment, and that its admission gave rise to reversible error.

We observe that the Fourth Amendment violation found here may have been readily avoided had the search warrant been drafted to include a search of Ward's person. Henry's affidavit was certainly adequate to establish probable cause for searching *both* the residence and Ward's person. The search warrant, as originally drafted, included a search of Ward. This language, however, was, for some unexplained reason, deleted from the warrant. The application of the exclusionary rule does have a deleterious effect on the fact finding process. Here it was occasioned by an unjustified warrantless search.

B.

Ward contends the seizure of $3,290 from Josey was the result of a warrantless and unreasonable search and that the $3,290 so seized was improperly admitted in evidence. We disagree.

While it is true that Josey tendered the $3,290 to Henry under the mistaken belief that Henry was acting on behalf of Ward, there is nothing in the record indicating that Josey was under any compulsion or pressure to give the money to Henry. On the contrary, the record establishes that Josey voluntarily gave the money to Henry.

Ward's contention is predicated on the proposition that Henry, by using an alias, wrongfully acquired the $3,290 by deceit and deception. In our view, the fact that Henry used an alias in acquiring the money from Josey is of no moment. Josey phoned Ward's residence, received instructions from Henry as to how to get to the residence, and thereafter drove to the residence

where he voluntarily tendered the money to Henry. The courts have long recognized the right and necessity of the Government to conceal the identity of its agents.

In *Lewis v. United States*, 385 U.S. 206, 87 S.Ct. 424, 17 L.Ed.2d 312 (1966) the Supreme Court opined:

Indeed, it has long been acknowledged by the decisions of this Court, see *Grimm v. United States*, 156 U.S. 604, 610 [15 S.Ct. 470, 472, 39 L.Ed. 550] (1895), and *Andrews v. United States*, 162 U.S. 420, 423 [16 S.Ct. 798, 799, 40 L.Ed. 1023] (1896), that, in the detection of many types of crime, the Government is entitled to use decoys and to conceal the identity of its agents.... Were we to hold the deceptions of the agent in this case constitutionally prohibited, we would come near to a rule that the use of undercover agents in any manner is virtually unconstitutional *per se.* Such a rule would, for example, severely hamper the Government in ferreting out those organized criminal activities that are characterized by covert dealings with victims who either cannot or do not protest.

385 U.S. at pp. 208–209 and 210, 87 S.Ct. at pp. 425–426 and 427.

*See also: United States v. Simko*, 662 F.2d 656 (10th Cir. 1980), *quoting United States v. Russell*, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973) at pp. 435, 436, 93 S.Ct. at pp. 1644, 1645; *United States v. Jobe*, 487 F.2d 268 (10th Cir. 1973), *cert. denied*, 416 U.S. 955, 94 S.Ct. 1968, 40 L.Ed.2d 305 (1974).

■ Henry's use of an alias and his actions in meeting with Josey were not violative of Ward's constitutional rights. This is particularly true, when, as here, Josey voluntarily tendered the $3,290 to Henry in payment of a gambling debt owed to Ward. The $3,290 was, accordingly, properly admitted in evidence.

## II.

We have considered Ward's remaining allegations of error. We hold that they are, individually and collectively, without merit.

Reversed and remanded for further proceedings consistent with the views expressed herein.

McWILLIAMS, Circuit Judge, dissents:

I respectfully dissent. The majority hold that the initial patdown search of Ward for weapons was unreasonable and therefore violative of the Fourth Amendment under the standard enunciated by the Supreme Court in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). I disagree. Ward was the target of a criminal investigation concerning illicit bookmaking activities. In connection with that investigation, Henry, an undercover IRS agent, had previously placed illegal bets with Ward. Agent Henry, along with other IRS agents, arrived at Ward's residence to execute a lawfully issued search warrant. When Agent Henry presented himself at Ward's home, presumably Ward recognized Henry as the individual who a few days earlier had placed bets with him. It follows that at least at this point in time Ward was aware that he was a target in a criminal investigation.

Under these circumstances, I believe that a patdown by Henry of Ward's person to determine whether Ward was armed, prior to commencing the search of the premises, was reasonable. I suggest that an IRS agent who executes a warrant authorizing the search of a home for gambling paraphernalia in the presence of the homeowner, who is also a suspect in a criminal investigation of illegal bookmaking operations, may prudently and reasonably believe that the person witnessing the search may be armed and dangerous. Henry need not have been absolutely certain that Ward was armed prior to frisking him, and due weight should be accorded to the inferences Henry was entitled to draw from the facts and circumstances then present in the light of human experience. See *Terry v. Ohio*, 392 U.S. at 27, 88 S.Ct. at 1883. Accordingly, I would hold the patdown search of Ward was justified.

*Ybarra v. Illinois*, 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979) is distinguishable

on the facts. If my dissent be in conflict with *United States v. Sporleder*, 635 F.2d 809 (10th Cir. 1980), I, for one, would overrule Sporleder.