930 F.2d 35
 Unpublished Disposition
NOTICE: Tenth Circuit Rule 36.3 states that unpublished opinions and orders and judgments have no precedential value and shall not be cited except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Prince Edward BANKS, Jr., Defendant-Appellant.
 No. 90-1219.
 United States Court of Appeals, Tenth Circuit.
 April 3, 1991.
 
 Before JOHN P. MOORE, SETH and BRORBY, Circuit Judges.
 ORDER AND JUDGMENT*
 JOHN P. MOORE, Circuit Judge.
 
 
 1
 Following a conditional plea of guilty to the charge of possession of a firearm by a convicted felon, Prince Edward Banks, Jr. appeals the district court's denial of his motion to suppress. He claims that both the initial stop of his car and the search of his person were illegal. We affirm.
 
 
 2
 In the early morning hours of February 23, 1990, Sergeant Gerald Whitman of the Denver Police Department was patrolling the area around 39th Avenue and Elm Street in Denver, Colorado. Sgt. Whitman testified that he was in the vicinity because of its propensity for specific criminal activity. Sgt. Whitman stated that the police are often called to the area of two popular bars to quell fights, vandalism, and liquor law violations, especially around the closing time of the bars. At 2:25 a.m., twenty-five minutes after the bars' closing time, Sgt. Whitman was sitting in his patrol car across from one of the bars, the Beehive, waiting to talk to the manager. He noted "the area was virtually clear now of people."
 
 
 3
 At this point a Cadillac with temporary license plates and a rental sticker on the bumper crossed in front of the headlights of Sgt. Whitman's car. He saw two persons in the car, a shorter man "who looked like a kid" driving, and a taller male passenger. The car continued past Sgt. Whitman and pulled to the curb in a darkened stretch of road in front of a closed warehouse. Sgt. Whitman stated he was initially concerned because the location was known to him as a high crime area in which many rental car thefts had occurred.
 
 
 4
 As Sgt. Whitman watched through his rearview mirror, the driver slid over into the passenger seat and the original passenger got out of the car and walked into the darkness. Because he was "under the impression that the car may have been stolen," Sgt. Whitman pulled up in front of the Cadillac and parked in a manner that would make it difficult for the car to pull away.
 
 
 5
 Sgt. Whitman then walked over to the Cadillac and asked the driver (now in the passenger seat) to get out of the car. As the driver emerged he blurted out that the car wasn't his and handed an "Avis key ring" to the Sergeant. The driver said his name was Burks, and admitted that he didn't have a driver's license. Sgt. Whitman handcuffed Mr. Burks and placed him in the police car. Sgt. Whitman then called for backup assistance based on his suspicion that the Cadillac was stolen and the fact that one of the suspects was not in sight.
 
 
 6
 At this point, Mr. Banks emerged "out of the darkness" and approached Sgt. Whitman, who asked and received a positive answer regarding whether the car belonged to the defendant. Sgt. Whitman said at this point he was concerned because Mr. Banks "came out of the darkness and walked away initially, so I didn't know whether he left something over there or brought something back."
 
 
 7
 As Mr. Banks approached, Sgt. Whitman "touched his shoulder from underneath his arm to do a standing modified search." As Sgt. Whitman stepped behind Mr. Banks and "started tipping him back," Mr. Banks stated, "Hey, man, don't get excited. I have got a gun." Sgt. Whitman asked for the location of the gun, and Mr. Banks told him it was in the waistband of his pants. Following Mr. Banks' direction, Sgt. Whitman found and seized a loaded .380 semiautomatic handgun. Sgt. Whitman then handcuffed Mr. Banks and seated him in the police car, placing him under arrest for carrying a concealed weapon.
 
 
 8
 The defendant raises two issues on appeal: 1) the initial stop of the vehicle was illegal, and 2) the weapons search was illegal. First, the defendant argues that Sgt. Whitman lacked any kind of articulable suspicion that the car was stolen when he positioned the police car so the Cadillac could not leave. The defendant persuasively argues that when Sgt. Whitman pulled up beside the parked Cadillac, he had legally "stopped" the car, citing United States v. Robinson, 535 F.2d 881, 883 n. 2 (5th Cir.1976) ("the term 'stop' does not mean a physical stop but rather a restraint of movement. Thus the fact that the car was already stopped at the time the officer approached is of no moment in the constitutional inquiry.") The defendant argues that at this point Sgt. Whitman did not possess any information that could have led to a reasonable suspicion of criminal activity under Terry v. Ohio, 392 U.S. 1 (1968), and that it was clear error for the district judge to have found that the officer did have the requisite level of suspicion.
 
 
 9
 Under Terry, an officer must have "a reasonable, articulable suspicion that the person has been, is, or is about to be engaged in criminal activity." United States v. Recalde, 761 F.2d 1448, 1454 (10th Cir.1985), citing Terry, 392 U.S. at 20-22; see also Delaware v. Prowse, 440 U.S. 648, 663 (1979). In reviewing the legality of a stop, the court should consider that "the essence of all that has been written is that the totality of the circumstances--the whole picture--must be taken into account." United States v. Cortez, 449 U.S. 411, 417 (1981). A reviewing court examines a denial of a motion to suppress evidence under a "clearly erroneous" standard. United States v. Corral, 899 F.2d 991, 993 (10th Cir.1990).
 
 
 10
 The district court found that Sgt. Whitman had a reasonable suspicion under Terry to stop the defendant's vehicle. The district court was justified in this conclusion for a number of reasons.
 
 
 11
 First, Sgt. Whitman saw what he believed to be an underage driver driving an expensive rental car in an area in which Sgt. Whitman testified he knew rental cars had been stolen previously. Second, Mr. Burks and Mr. Banks acted suspiciously once the police car came into view. They immediately pulled over into a darkened stretch of road, and Mr. Burks slid over to the passenger side of the car while Mr. Banks stepped out of the car and walked away. These circumstances, in addition to the actions of Mr. Burks and Mr. Banks, provided Sgt. Whitman with reasonable suspicion to stop Mr. Banks' vehicle.
 
 
 12
 Mr. Banks next claims that Sgt. Whitman conducted an illegal search of his person for weapons. The defendant states in his brief that the district court found Sgt. Whitman had not performed a search. He points out that the district court found that Sgt. Whitman had merely touched the defendant when he volunteered that he had a gun in his waistband. The defendant argues that in light of the statements from Sgt. Whitman about how he approached and grabbed the defendant, the district court clearly erred in finding that these actions did not constitute a search. Also, the defendant contends that even assuming the stop was proper, an officer must have some reason to believe that a person is armed and dangerous before he may conduct a pat-down search, citing Ybarra v. Illinois, 444 U.S. 85, 88-91 (1979), and United States v. Sporleder, 635 F.2d 809, 814 (10th Cir.1980).
 
 
 13
 On cross-examination, Sgt. Whitman stated that he saw no bulge in the defendant's clothing, nor did he see anything that suggested the defendant was carrying a weapon. He simply felt that the situation as a whole was threatening to him and possibly to others nearby.
 
 
 14
 Again, the district court's findings whether a search occurred is subject to the "clearly erroneous" standard of review. United States v. Cooper, 733 F.2d 1360, 1364 (10th Cir.), cert. denied, 467 U.S. 1255 (1984). After examining the sequence of events, we believe the district court did not clearly err in finding a search had not yet begun when Mr. Banks volunteered that he had a gun in the waistband of his pants. Sgt. Whitman touched the defendant on the shoulder, stepped behind him, and then started to tilt him backward to place him off-balance. Sgt. Whitman had not yet begun to pat the defendant down in a search for weapons when Mr. Banks stated that he had a gun. It is axiomatic that a search which did not occur could not violate the Constitution. The determination of whether a search had begun prior to Mr. Banks' exclamation that he was carrying a weapon is a close question, yet the record certainly supports the district court's conclusion.
 
 
 15
 Having reached this conclusion, we are nonetheless constrained to observe that even if Sgt. Whitman had conducted a search, it would have been justified by the circumstances. Mr. Banks' actions would have caused a reasonably prudent officer to be concerned with his safety. Giving due weight to the inferences as permitted by the circumstances, Terry, 392 U.S. at 27, we conclude that Sgt. Whitman's conduct was well within the bounds of constitutional propriety. Id. 2 30.
 
 
 16
 AFFIRMED.
 
 
 
 *
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3