**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 26 2005**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

DENVER JUSTICE AND PEACE
COMMITTEE, INC.; LUIS
ESPINOSA-ORGANISTA,

      Plaintiffs - Appellees,

v.

CITY OF GOLDEN; DAVID FARLEY, a
detective with the Golden Police
Department, in his individual capacity;
JEFF D. KREUTZER, a detective with the
Golden Police Department, in his
individual capacity; DAVID J. THOMAS,
District Attorney for the First Judicial
District, in his official capacity; MARK
PAUTLER, an Assistant District Attorney
for the First Judicial District, in his
individual capacity; CITY AND
COUNTY OF DENVER,

      Defendants,

  and

ANTHONY ORTIZ, an officer with the
Denver Police Department, in his
individual capacity,

      Defendant - Appellant.

No. 03-1470

Stan M. Sharoff, Assistant City Attorney, Denver City Attorney's Office (Thomas S. Rice and Brian K. Matise, Senter Goldfarb & Rice, L.L.C., on the brief), Denver, Colorado, for Defendant-Appellant.

Mark Silverstein, American Civil Liberties Union, (Lino S. Lipinsky de Orlov, McKenna Long & Aldridge LLP, with him on the brief) Denver, Colorado, for Plaintiffs-Appellees.

Before **BRISCOE**, **HOLLOWAY** and **HARTZ**, Circuit Judges.

**HOLLOWAY**, Circuit Judge.

Plaintiffs sued the City of Golden and Denver police officer Anthony Ortiz ("Ortiz") under 42 U.S.C. §§1983 and 1988, alleging violation of their Fourth Amendment rights during a search of the Denver Justice and Peace Committee ("DJPC") offices. The District Court denied Defendants' motion to dismiss claims against Officer Ortiz on the ground of qualified immunity, for Ortiz's pat-down search of Plaintiff-Appellee Luis Espinosa-Organista ("Espinosa"), who is office manager of DJPC and was on the premises at the time police executed their search warrant for the DJPC office. Defendant Officer Ortiz now appeals.

# I

## BACKGROUND

In reviewing a District Court's denial of a motion for dismissal, we accept as true "all well pleaded facts in the complaint, as distinguished from conclusory allegations." *Smith v. Plati*, 258 F.3d 1167, 1774 (10th Cir. 2001). The following are the facts as alleged by Plaintiff-Appellees DJPC and Espinosa in their Fourth Amended Complaint.[1]

DJPC is an advocacy organization that focuses on United States foreign policy in Latin America. It has generally been critical of past and present U.S. military involvement in the region as well as economic policies promulgated by the World Bank and International Monetary Fund which affect that region. DJPC's activities include a newsletter, website, speakers, articles, leaflets, letter-writing campaigns, picketing, legislative advocacy and coalition work.

DJPC shares office space in Denver with the Quaker-run American Friends

---

[1] Subsequent to filing their initial Complaint (Aplt. App. at 17), Plaintiffs filed five Amended Complaints (Aplt. App. at 40, 66, 94, 123 and 173). Although the Amended Complaints add and delete allegations and claims relating to other issues, the Fourth Amendment claims related to the frisk of Espinosa remained the same.

Ortiz filed his Motion to Dismiss based on qualified immunity on July 25, 2003. At the time the operative pleading was the Fourth Amended Complaint. Subsequent to the Motion to Dismiss, a Fifth Amended Complaint was accepted for filing by the District Court. The Fifth Amended Complaint raises the same constitutional claim under the Fourth Amendment against Ortiz that was present in the Fourth Amended Complaint; therefore this appeal was not mooted by its filing. Our opinion will cite to the Fourth Amended Complaint.

Service Committee (AFSC). On December 14, 2000, Golden city police officers searched the DJPC and AFSC offices, pursuant to a search warrant issued by the Jefferson County Court. Defendant Officer Ortiz and other Denver Police officers were also present for the search. The Golden police were investigating an incident of vandalism during a DJPC-organized protest at Kohl's department store in Golden on December 9, 2000. The search warrant authorized law enforcement officers to seize specified property at the DJPC offices including but not limited to:

- "Pamphlets, papers and flyers that are protest related;"

- "Posters that are protest related;"

- "Videotape and still photographs of persons protesting any organization or business;" and

- "Membership lists for Denver Peace & Justice Committee"

Fourth Amended Complaint ¶34, Aplt. App. at 131.

Plaintiff-Appellant Espinosa was not present when the police arrived to execute the search warrant. He was contacted by his wife, Danielle Short, who is an employee of AFSC and was present at the time the police arrived. Espinosa decided to come to the office, arriving at about 1:30 p.m. while the search was already underway.[2] When Espinosa entered the DJPC office, he was immediately approached by two police officers who asked him why he was there. Espinosa explained that he was DJPC's office

---

[2] The total duration of the search was alleged to have been approximately 3 ½ hours. Fourth Amended Complaint ¶37, Aplt. App. at 132.

administrator and that his wife worked for the AFSC and was present. The police officers asked him for identification, which he provided. After Espinosa provided his identification, Defendant Police Officer Ortiz immediately put his hands on Espinosa and conducted a pat-down search without Espinosa's consent. While conducting the frisk, Officer Ortiz asked Espinosa if he had any knives or other weapons. Espinosa said he did not. Officer Ortiz's frisk failed to disclose any weapons.

Before Espinosa arrived at the office, everyone present had been asked to provide identification to the police, but none had been frisked. Espinosa was the only one to be frisked, and he was the only one present with dark skin and an apparent Hispanic appearance. Plaintiff-Appellees allege that at the time Officer Ortiz conducted the pat-down frisk, he did not have objective and articulable facts that would make a reasonable person suspect that Espinosa was armed, nor those that would make a reasonable person suspect Espinosa was involved in or about to be involved in criminal activity. Fourth Amended Complaint ¶¶61-62, 98, Aplt. App. at 138, 144.

Upon completion of the search, police officers confiscated membership lists, mailing lists, phone tree lists, pamphlets, posters, newsletters, articles and other written material. DJPC filed suit in the Federal District Court for the District of Colorado, contending that the search and seizure violated its rights under the First and Fourth Amendments and the Privacy Protection Act of 1980. Espinosa joined the action to seek nominal damages and attorney's fees from Officer Ortiz for the allegedly suspicionless

pat-down frisk during the search of the DJPC office.

## II

## PROCEDURAL HISTORY

Espinosa brought his action against Officer Ortiz seeking nominal damages pursuant to 42 U.S.C. §1983 and attorney's fees pursuant to 42 U.S.C. §1988. Because the claim involved questions of federal substantive law under the Fourth Amendment and 42 U.S.C. §1983, the District Court had subject matter jurisdiction pursuant to 28 U.S.C. §1331.

Defendant Officer Ortiz moved to dismiss Espinosa's claims against him under Fed. R. Civ. P. 12(b)(6) based on qualified immunity. He filed his motion to dismiss on July 25, 2003, and it was briefed and argued in the District Court on October 8, 2003.

That day, in an oral ruling the District Judge stated that our decision in *United States v. Ward*, 682 F.2d 876 (10th Cir. 1982) clearly establishes that once the police possess a warrant to search the premises only, the Fourth Amendment prohibits the search of persons found on the premises, regardless of that person's relationship to the premises, unless the police have a reasonable suspicion that the person is armed. Aplt. App. at 206. She also noted as persuasive the decision in *Munz v. Ryan*, 752 F.Supp. 1537 (D.Kan. 1990), recognizing that the law of the 10th Circuit clearly prohibited the personal search of a homeowner during the execution of a search warrant at her home, absent a recognized exception to the warrant requirement.

-6-

At least at this stage of the litigation, the Judge found that there was no evidence to support a reasonable suspicion that Espinosa was armed. She therefore denied Ortiz's motion to dismiss and denied Ortiz's request that discovery be stayed pending appeal. Ortiz appealed. Aplt. App. at 190.

This Court has appellate jurisdiction pursuant to 28 U.S.C. §1291. The District Court's order filed October 20, 2003, denying Ortiz's motion to dismiss on qualified immunity grounds is a final collateral order for the purposes of §1291 under the holding of *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985), because it deprives Officer Ortiz of immunity from the burdens of discovery and trial. DJPC's claims are not before this court. The dispositive question in this appeal is whether the District Court correctly denied Ortiz's motion to dismiss.

### III

### STANDARD OF REVIEW

All issues raised on appeal are questions of law that arise in the context of Ortiz's motion to dismiss based on qualified immunity. This Court reviews *de novo* the district court's decision on a motion to dismiss under Fed. R. Civ. P. 12(b)(6) based on qualified immunity. *See Sutton v. Utah State Sch. for Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999). The court must view the factual allegations in the light most favorable to Plaintiff, and should not dismiss the complaint unless it appears that Plaintiff cannot prove any set of facts that would entitle him to relief. *See Sutton*, 173 F.3d at 1236.

In evaluating claims of qualified immunity, we must first determine whether Defendant Ortiz's actions, as alleged in the complaint, violated a constitutional or statutory right. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). If we answer that question affirmatively, we then must determine whether the right allegedly violated has been "clearly established in a more particularized, and hence more relevant sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id*. (quoting *Anderson v. Creighton*, 483 U.S., 635, 640 (1987)).

## IV

## DISCUSSION

We are satisfied that Espinosa has sufficiently alleged that he was frisked without reasonable suspicion that he was involved in any criminal activity or that he possessed a weapon.[3] Ortiz argues that for reasons of officer safety and general efficiency in executing a lawful search warrant, police should have the authority to frisk persons who "enter" an area where a search warrant is being executed, even without such reasonable

---

[3] *See* Fourth Amended Complaint at ¶ 61 ("When he conducted the pat-down frisk, Ortiz was not in possession of objective and articulable facts that would make a reasonable person suspect that Espinosa was involved or about to be involved in criminal activity."). Aplt. App. at 138. *See also* Fourth Amended Complaint at ¶62 ("Ortiz was not in possession of objective and articulable facts that would make a reasonable person suspect that Espinosa was armed."), ¶98 ("Ortiz did not have reasonable grounds to suspect that Espinosa was armed. Nevertheless, Ortiz subjected Espinosa to a frisk."). Aplt. App. at 138, 144.

-8-

suspicion.

This Circuit has never articulated such a principle and will not do so now. As the Supreme Court stated in *Katz v. United States*:

> 'Over and again, this Court has emphasized that the mandate of the Fourth Amendment requires adherence to judicial processes,' *United States v. Jeffers*, 342 U.S. 48, 51 [(1951)] and that searches outside the judicial process, without prior approval by a judge or magistrate, are per se unreasonable under the Fourth Amendment – subject only to a few specifically established and well-delineated exceptions.

389 U.S. 347, 357 (1967). In *Terry v. Ohio*, 392 U.S. 1 (1963), it was held that the officer "had reasonable grounds to believe that [the individual] was armed and dangerous, and it was necessary for the protection of himself and others to take swift measures to discover the true facts and neutralize the threat of harm if it materialized . . . ." *Id.* at 30. In *Terry*, the Court concluded that:

> We merely hold today that where a police officer observes unusual conduct *which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous,* where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him. Such a search is a reasonable search under the Fourth Amendment, and any weapons seized may properly be introduced in evidence against the person from whom they were taken.

*Id.* at 30-31 (emphasis added).

*Ybarra v. Illinois*, 444 U..S. 85, 93-94 (1979), emphasized the narrow scope of the

-9-

*Terry* exception, holding that nothing in *Terry* authorizes a "generalized cursory search for weapons." *Id.* at 94. The *Ybarra* Court further expressly held that "[t]he 'narrow scope' of the *Terry* exception does not permit a frisk for weapons on less than reasonable belief or suspicion directed at the person to be frisked, *even though that person happens to be on premises where an authorized narcotics search is taking place.*" *Id.* at 94 (emphasis added). The emphasized statement just quoted ("even though that person happens to be on premises where an authorized narcotics search is taking place.") directly rejects the principal argument of Ortiz: that the law was uncertain as to the absence of an exception permitting a frisk where the object of the "frisk" happens to be on premises being searched.

Our court has focused further on the limitations of a police officer's authority to frisk individuals in analogous circumstances in *United States v. Sporleder*, 635 F.2d 809 (10th Cir. 1980) and *United States v. Ward*, 682 F.2d 876 (10th Cir. 1982). In *Sporleder*, we invalidated a police officer's pat-down frisk of an individual who was present at the site of a suspected meth lab, a site where officers were executing a search warrant. *Id.* We said that *Terry v. Ohio* does not permit a generalized "cursory search for weapons" and that "[e]xcept as it may relate to an officer's reasonable belief that a person is armed and presently dangerous, it is of no consequence that the person is an object of the government's suspicion that led to the search of the premises." *Sporleder,* 635 F.2d *supra* at 814. In *Ward,* law enforcement officers executed a search warrant at Ward's

home and frisked Ward "as a routine precaution." *Ward*, *supra*, 682 F.2d at 880. Even though the law enforcement officers had probable cause to believe Ward was committing a federal offense, he was not under arrest and the pat-down frisk was invalid because "it was not supported by a reasonable suspicion that he was armed and presently dangerous." *Id*.

Ortiz urges that the execution of a search warrant involves risks of harm to law enforcement officers even when no special danger to the police is evidenced in the record. This risk of harm, he urges, should provide police with the authority to "routinely frisk" any persons whom they encounter and who seek to "enter" an area where a lawful search warrant is being executed. The Supreme Court has noted that during the execution of a search warrant, "[t]he risk of harm to both the police and the occupants is minimized if the officers routinely exercise unquestioned command of the situation." *Michigan v. Summers*, 452 U.S. 692, 702-3 (1981)).

The Court concluded in *Summers*, and recently stated again in *Muehler, et al v. Mena*, 125 S. Ct. 1465 (2005) , that police officers have a "categorical" authority to **detain** persons found on premises subject to a lawful search warrant for "contraband" materials, incidental to the officers' execution of the warrant. *Muehler*, *supra* at 1470. The Court in *Muehler* also held that "[i]nherent in *Summers*' authorization to detain an occupant of the place to be searched is the authority to use reasonable force to effectuate the detention." *Id*. In sum, Ortiz's argument is that the authority to detain extends fairly

broadly to the exercise of search warrants such as the one in question here, and that an officer's search of an individual by means of a "routine frisk" is appropriate in conjunction with such a detention.

Ortiz argues that the instant case is analogous to the situation we confronted in *United States v. Ritchie*, 35 F.3d 1477 (10th Cir. 1994), where FBI agents detained the occupant of premises being searched and subjected him to a pat-down frisk. Although the focus of our inquiry in *Ritchie* was on the detention, rather than the frisk, Ortiz noted that we acknowledged the frisk several times in our opinion. *See id. at* 1479 (noting that police officers present at Mr. Ritchie's residence while awaiting a search warrant stopped Mr. Ritchie as he attempted to leave, explained that they would be detaining him while they awaited a warrant to search his residence, and "performed a quick pat-down search."); *See also id.* at 1481 ("The facts here show that the agents never held Mr. Ritchie at gunpoint, that they handcuffed him only after formal arrest, that no agents used physical force in his detention apart from the pat-down search for weapons, and that they did not otherwise engage in strong arm tactics.") While we made no explicit comment on the reasonableness or unreasonableness of the pat-down search of Mr. Ritchie, we expressly approved the officers' actions preventing him from leaving the scene, noting this was permissible to prevent his returning later to try to thwart the execution of the warrant. *See id.* at 1484 (quoting 2 LaFave, SEARCH AND SEIZURE §4.9(e) at 306.). Based upon this logic, Ortiz asserts that a person who seeks to "enter" an area where a

warrant is being executed could pose a similar threat to that of a person who leaves and returns to the scene, and that police ought to be permitted to both detain and search such a person even without reasonable, individualized suspicion.

Ortiz's reliance on *Summers*, *Muehler* and *Ritchie* is problematic. One significant difficulty, which Ortiz himself acknowledges with respect to *Ritchie*, is the fact that we there did not actually analyze the frisk at all, focusing instead on the temporary detention of the suspect. Likewise, neither *Summers* nor *Muehler* refer to a frisk at all. The Court's recent *Muehler* decision deals instead with Ms. Muehler's detention and handcuffing by police officers executing a search warrant and her interrogation by an Immigration and Naturalization Service officer who was accompanying the police. The Court's decision in *Summers*, 452 U.S. *supra* at 695 n. 4, upon which both *Ritchie* and *Muehler* were largely based, expressly warned us that the "seizure" or detention issue "should not be confused with the 'search' issue presented in *Ybarra v. Illinois*." Here, unlike in *Muehler*, *Summers* or *Ritchie*, we are squarely confronted with the pat-down **search** of Mr. Espinosa, without his consent and without reasonable individualized suspicion.

A further distinction, of potentially even greater significance, is the nature of the search warrant being executed. In *Ritchie*, police were searching Mr. Ritchie's property for the proceeds of an armed robbery, suspected to have been committed by Mr. Ritchie himself just one day earlier. *Ritchie*, 35 F.3d *supra* at 1479. In *Muehler*, police were investigating a gang-related, drive-by shooting and searching for weapons and evidence

of gang membership on a property where at least one and possibly more armed gang members resided. *Muehler*, 125 S. Ct. *supra* at 1468.  Here police were not searching for weapons, the proceeds of a violent crime, or contraband.  Rather, the warrant in this case authorized officers to search for potentially First Amendment protected material: pamphlets, flyers, posters, photographs and membership lists.  Police were investigating an incident of alleged vandalism, but neither DJPC, Espinosa, nor anyone else at the scene was necessarily implicated in the incident.

In *Summers*, the Court expressly noted that its reasoning authorizing a temporary detention did not apply where the warrant authorizes a search for mere evidence at the premises of a party whose possession of the materials sought is not a crime.  *See Summers*, 452 U.S. *supra* at 705 n. 20 (citing *Zurcher v. Stanford Daily*, 436 U.S. 547, 560 (1978)).  As we explained in *Ritchie*, 35 F.3d *supra* at 1483, the *Zurcher* case "involved the validity of third-party searches, where there is 'probable cause to believe that fruits, instrumentalities or other evidence of crime is located on identified property but [there is no] probable cause to believe that the owner or possessor or the property is himself implicated in the crime.'" (quoting *Zurcher*, 436 U.S. at 553). We concluded in *Ritchie* that this footnote from *Summers* "stems from a concern that in some instances the existence of a warrant based on probable cause would not give the police 'an easily identifiable basis for determining that suspicion of criminal activity justifies a detention of [the] occupant.'"

In *Ritchie*, we also noted the Court's reference in *Summers* to searches for "contraband" and concluded that to the extent the *Summers* Court restricted its holding to warrants authorizing the search for "contraband," the definition of "contraband" was broad enough to include the stolen property Mr. Ritchie was alleged to have in his possession. The Court in *Muehler*, 125 S.Ct. *supra* at 1470 n. 2, reiterated the restriction of police officers' authority to detain occupants of a premises being searched to the case "when a neutral magistrate has determined police have probable cause to believe contraband exists[.]"

In sum, we hold that *Muehler*, *Summers*, and *Ritchie* do not support an officer's categorical authority to conduct a pat-down search of any person who seeks to enter an area where a search warrant is being executed. This is not to say such a search would never be permitted. Although the *Muehler* Court did not discuss any "frisk" of Ms. Muehler, it did approve of handcuffing her and holding her at gunpoint, which are significant extensions beyond an ordinary, peaceable detention as was the case in *Summers* and *Ritchie*. Importantly, though, the Court stressed that these extreme measures were justified by the circumstances in *Muehler*:

> But this was no ordinary search. The governmental interests in not only detaining, but using handcuffs, are at their maximum when, as here, a warrant authorizes a search for weapons and a wanted gang member resides on the premises. In such inherently dangerous situations, the use of handcuffs minimizes the risk of harm to both officers and occupants. *Cf Summers*, *supra* at 702-703 (recognizing that the execution of a warrant to search for drugs "may give rise to sudden violence or frantic efforts to conceal or destroy evidence.") Though the safety risk inherent in executing a search warrant for

weapons was sufficient to justify the use of handcuffs, the need to detain multiple occupants made the use of handcuffs all the more reasonable. *Cf Maryland v. Wilson*, [519 U.S. 408][,]. . . 414 [(1997)] (noting that "danger to an officer from a traffic stop is likely to be greater when there are passengers in addition to the driver in the stopped car").

*Muehler*, 125 S. Ct. *supra* at 1470-71.

We hold that the law was sufficiently clear at the time Ortiz conducted the pat-down search of Espinosa that Ortiz may not claim qualified immunity. The Supreme Court recently reviewed the legal standard for determining whether a government official is entitled to qualified immunity in *Hope v. Pelzer*, 536 U.S. 730 (2002), stating:

> For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. That is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of pre-existing law that unlawfulness must be apparent.

*Id.* at 739 (citations and internal quotations omitted). In discussing the degree of factual similarity that is required to conclude that the law is clearly established, the Court noted that all that is required is that prior case law provide "fair warning" that an officer's conduct would violate constitutional rights. *Id*. at 739-40. Thus, "officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Id*. at 741.

The Supreme Court has articulated narrow grounds that permit police officers to detain individuals who are present during the execution of a search warrant, without running afoul of the Fourth Amendment. A detention, however, remains distinct from a

search. In addition, based on the allegations of Espinosa's complaint, it would have been clear to the officers executing the search warrant at the DJPC office that the circumstances of that search did not implicate the apprehension of danger or the presence of contraband that may have permitted detention of persons present at the scene, pursuant to *Summers.* Rather, the circumstances here fall squarely into a factual pattern where a pat-down search of an individual would be prohibited absent reasonable, individualized suspicion. *See Ybarra*, *Sporleder* and *Ward.* Officer Ortiz therefore cannot prevail on his defense of qualified immunity on the basis of the circumstances he has averred.

Accordingly, the order denying the motion to dismiss of Ortiz is

AFFIRMED.