**Belinda MUNZ, Plaintiff,**

v.

**Billie RYAN, et al., Defendants.**

**Civ. A. No. 88–1342–T.**

United States District Court,
D. Kansas.

Nov. 26, 1990.

*Id.* at 297. Neither theory is alleged nor appears   applicable here.

Michael S. Holland, Russell, Kan., for plaintiff.

John L. Carmichael, Woodard, Blaylock, Hernandez, Pilgreen & Roth, Wichita, Kan., for defendants.

## MEMORANDUM AND ORDER

THEIS, District Judge.

This matter is before the court on the motion of defendants for summary judgment. Plaintiff has brought this action under 42 U.S.C. § 1983, alleging that defendants subjected her to an illegal strip search in violation of her rights guaranteed under the fourth and fourteenth amendments.

The facts of this case are largely undisputed. At 12:35 a.m. on July 2, 1987, a search warrant was issued authorizing a search of plaintiff's residence in St. John, Kansas for stolen bills bearing identified serial numbers. The application for the search warrant alleged that plaintiff was suspected of having stolen $700.00 in cash from her neighbors, Keith and Kathleen Bright, over the course of approximately one year. In cooperation with the St. John police department, the Brights had planted bills marked with ultra-violet ink in a chest drawer in their home. A few days later, plaintiff visited the Brights, during which time plaintiff was left alone for several minutes while Mrs. Bright answered her doorbell. Plaintiff and Mrs. Bright then drove to a sandwich shop where plaintiff made a small purchase. The Brights checked the chest drawer that evening and found some of the marked bills missing. After the Brights informed the St. John Police Department of these events, an officer contacted the owner of the sandwich shop and viewed under an ultra violet light the money taken in that day. Two one dollar bills were discovered bearing the ink markings and the serial numbers of the money that had been planted in the Brights' home.

The search warrant for plaintiff's residence authorized a search for the identified bills located at or on: "The Juan and/or Belinda Munz residence at 435 West Third, St. John, Kansas including the garage and any other outbuildings and vehicles located at that address, including but not limited to two cars and one pickup." The warrant did not authorize the arrest or search of any persons on these premises.

The police executed the search warrant the same morning it was issued.[1] Plaintiff and her husband were both present. During the course of the search, and before any of the marked bills had been found, plaintiff indicated that she needed to use the bathroom. Chief of police Kelly Parks then directed Billie Ryan, the full-time clerk and part-time matron for the city, to accompany plaintiff into the bathroom for the purpose of searching her clothing. There is no contention that plaintiff consented to such a search.[2] Plaintiff and Ms. Ryan entered the bathroom where plaintiff removed each item of clothing one piece at a time and handed them individually to Ms. Ryan. After searching each item, Ms. Ryan returned them to plaintiff. At no

---

[1] The record does not indicate the time of morning when the police searched plaintiff's residence.

[2] Defendants also concede that such a search cannot be construed as a "*Terry*" search. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). (Dkt. 33, at 15). Prior to this strip search, however, the officers had directed plaintiff to empty her pockets and Ms. Ryan had also conducted a "pat-down" search of plaintiff before the two entered the bathroom. Plaintiff does not challenge these actions. Nor does plaintiff contend that this search, if otherwise legal, exceeded the permissible parameters of such a search. *See Bell v. Wolfish,* 441 U.S. 520, 559, 99 S.Ct. 1861, 1884, 60 L.Ed.2d 447 (1979) (no per se rule against or for strip searches, but particular search must be evaluated according to its scope, manner, justification, and place where it is conducted); *Hills v. Bogans,* 735 F.2d 391, 393–94 (10th Cir.1984).

time during this search did Ms. Ryan either touch or stare at plaintiff. Although no money was found on plaintiff's person, the bills described in the search warrant were later found in a jewelry box located in plaintiff's bedroom. At some point an arrest warrant was obtained, although the parties' memoranda do not indicate when plaintiff was formally placed under arrest. In any event, it is undisputed that plaintiff was not arrested on the night of the search.

Plaintiff seeks compensatory and punitive damages from Ms. Ryan, compensatory damages from Chief Kelly Parks, as well as damages from the municipality and individual members of the city commissioners of the City of St. John for the strip search. Defendants move for summary judgment, arguing that the search of plaintiff was constitutionally permissible, and alternatively that they are entitled to qualified "good faith" immunity from suit. Because of the interrelatedness of these two defenses, the court considers them together.

Summary judgment is appropriate when the documentary evidence filed with the motion "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A principal purpose "of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses...." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The court's inquiry is to determine "whether there is the need for a trial —whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The court reviews the evidence on summary judgment under the substantive law and based on the evidentiary burden the party will face at trial on the particular claim. *Anderson,* 477 U.S. at 254, 106 S.Ct. at 2513.

In addition, the court must consider summary judgment motions based on the defense of qualified immunity with some modifications to the normal standards of review. Qualified immunity is available to police officers sued in their individual capacity when they could not reasonably have known that their actions violated the law. *Ross v. Neff,* 905 F.2d 1349, 1354 (10th Cir.1990).

> [O]nce a defendant raises a qualified immunity defense the plaintiff assumes the burden of showing that the defendant has violated clearly established law. To overcome the defense, the plaintiff must do more than identify a clearly established legal test and then allege that the defendant has violated it. The plaintiff must demonstrate a substantial correspondence between the conduct in question and prior law allegedly establishing that the defendant's actions were clearly prohibited.

*Hannula v. City of Lakewood,* 907 F.2d 129, 131 (10th Cir.1990) (citation omitted). The challenged action is reviewed under a standard of " 'objective legal reasonableness' ... in light of the legal rules that were 'clearly established' at the time it was taken." *Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987).

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. That is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Creighton,* 483 U.S. at 640, 107 S.Ct. at 3039; *see also V–1 Oil Co. v. Wyoming, Dep't of Envtl. Quality,* 902 F.2d 1482, 1487 (10th Cir.), *cert. denied,* — U.S. —, 111 S.Ct. 295, 112 L.Ed.2d 249 (1990). Because the defense of qualified immunity is intended in part to protect defendants from the burdens associated with trial, the existence of a qualified immunity defense should be determined at the earliest possible stage of litigation. *Creighton,* 483 U.S.

at 646 n. 6, 107 S.Ct. at 3042 n. 6; *Hannula,* 907 F.2d at 130 (quoting *Pueblo Neighborhood Health Centers, Inc. v. Losavio,* 847 F.2d 642, 645 (10th Cir.1988)).

## I. *Chief Parks and Bille Ryan*

■ Defendants contend that the search of plaintiff was proper and that they are therefore necessarily entitled to qualified immunity. It is among the most fundamental principles of fourth amendment jurisprudence "that warrantless searches are *per se* unreasonable under the Fourth Amendment." *United States v. Lopez,* 777 F.2d 543, 550 (10th Cir.1985) (citing *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967)); *see also Lavicky v. Burnett,* 758 F.2d 468, 474 (10th Cir.1985), *cert. denied,* 474 U.S. 1101, 106 S.Ct. 882, 88 L.Ed.2d 917 (1986). In this case, the officers had a search warrant that authorized a search of the premises, but not a search of plaintiff. Thus, the initial question is whether a search of plaintiff was authorized by a search warrant for her residence.

In *Ybarra v. Illinois,* 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979), the Court considered the legality of the search of a bar tavern patron when the search warrant only authorized a search of the tavern and of a bartender named "Greg." The officers executing the warrant had entered the tavern and announced that they were going to conduct a "cursory search for weapons," pursuant to which, officers discovered heroin on the person of Ybarra—one of the patrons in the bar. The Court held the search of Ybarra to be illegal, in part because the police had no probable cause to believe that he had committed, was committing, or was about to commit any offense. *Id.* at 90–91, 100 S.Ct. at 341–42. In this regard the Court noted:

> Although the search warrant, issued upon probable cause, gave the officers authority to search the premises and to search "Greg," it gave them no authority

whatever to invade the constitutional protections possessed individually by the tavern's customers.

*Ybarra,* 444 U.S. at 92, 100 S.Ct. at 342.

Defendants contend that *Ybarra* is distinguishable because in this case, plaintiff "was not a casual passerby, but rather the owner of the premises described in the search warrant, and the principal suspect described in the affidavit and application for the search warrant." Doc. 33, at 16. Arguably, *Ybarra* might not be read to prohibit the search of persons found on the premises specified in the search warrant where the police also have probable cause to suspect that evidence of criminal activity may be concealed on a person who is the subject of the investigation.[3] In support of this argument, defendants urge the court to adopt the view of the dissent in *Ybarra* and language of the Court in *Michigan v. Summers,* 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981), indicating that a search warrant for premises carries with it the implicit authorization to search persons who have a "special connection" with the premises. For obvious reasons, however, this court cannot adopt a view that did not persuade a majority of the Court in *Ybarra.* *See Ybarra,* 444 U.S. at 102–03, 100 S.Ct. at 348–49 (Rehnquist, J., dissenting; citing *Purkey v. Maby,* 33 Idaho 281, 193 P. 79 (1920) and *State v. Massie,* 95 W.Va. 233, 120 S.E. 514 (1923)).

Likewise, defendants may not rely on the rule of *Summers* for support. The specific holding of *Summers* was that police armed with a search warrant for premises may *detain* persons present at the time of the search of those premises. Applying this rule, the detention of Summers was permissible until police had found evidence of criminal activity. After discovering this evidence, and then legally placing Summers under arrest, the police were authorized to conduct a search incident to Summers' arrest. In interpreting *Ybarra,* however, the *Summers* Court stated *in dicta* "that the

---

**3.** There is some support for this position in language from *Ybarra* "that a warrant to search a place cannot normally be construed to authorize a search of *each* individual in that place." *Ybarra,* 444 U.S. at 92 n. 4, 100 S.Ct. at 342 n. 4

(emphasis added). This statement suggests that although each individual in a place named in a search warrant may not be searched, some individuals may be legitimate "areas" encompassed within the warrant.

search of Ybarra was invalid because the police had no reason to believe he had any special connection with the premises, and the police had no other basis for suspecting that he was armed or in possession of contraband." *Summers*, 452 U.S. at 695 n. 4, 101 S.Ct. at 2590 n. 4.

Although this court might be inclined to interpret this language as a "retreat" from *Ybarra*, it is foreclosed from doing so by the interpretation of *Ybarra* given it by this court's immediate superior court. In *United States v. Ward*, 682 F.2d 876 (10th Cir.1982), which was decided after *Summers*, the court excluded evidence seized from one Ward—even though Ward was the resident of the premises and was also the prime suspect of criminal activity under investigation—because the search warrant only authorized a search of the premises.[4] The court's holding rested squarely on its finding that suppression of the evidence from the pockets of Ward, insofar as he was not under arrest, was "dictated by *Ybarra v. Illinois.*" *Ward*, 682 F.2d at 880. Thus, although *Ybarra* was ambiguous regarding the scope of a search war-

rant for only a residence when the occupants of the residence are also suspects of the crime, such ambiguity was resolved in this circuit nearly five years before the search in this case. *See also United States v. Sporleder*, 635 F.2d 809, 813 (10th Cir.1980) (presence of defendant at building that was subject of search warrant was not sufficient to authorize search of defendant); *State v. Lambert*, 238 Kan. 444, 710 P.2d 693 (1985) (search of purse of a guest at residence not within scope of search warrant for residence and owner); *see also State v. Brown*, 245 Kan. 604, 610, 783 P.2d 1278 (1989) ("The lesson from both *Ybarra* and *Lambert* is that the police may not expand the scope of a search warrant without first obtaining judicial approval."); *cf. United States v. Mitchell*, 783 F.2d 971, 975–78 (10th Cir.) (declining to decide this issue because not properly raised in trial court), *cert. denied*, 479 U.S. 860, 107 S.Ct. 208, 93 L.Ed.2d 138 (1986). The court therefore concludes that under clearly established law at the time, the search of plaintiff was not authorized by the warrant.[5]

---

4. The court also explained how the illegality of the search might easily have been remedied:
   We note that the Fourth Amendment violation found here may have been readily avoided had the search warrant been drafted to include a search of Ward's person. [The police officer's] affidavit was certainly adequate to establish probable cause for searching *both* the residence and Ward's person.
   *Ward*, 682 F.2d at 881 (emphasis in original). The same can be said of the search conducted in this case.

5. The court notes that the interpretation of *Ybarra* given it by the court in *Ward* has not received widespread acceptance. *See People v. Hughes*, 767 P.2d 1201, 1203 (Colo.1989) (en banc; search warrant for "cocaine" on premises also authorized search of person not named in warrant whom police reasonably suspected as drug supplier); *People v. Gutierrez*, 109 Ill.2d 59, 92 Ill.Dec. 799, 485 N.E.2d 845 (1985) (police may search person not named in search warrant for premises where person has sufficient "connection" with premises and police have particularized probable cause to search that person); *State v. Brooks*, 51 N.C.App. 90, 95, 275 S.E.2d 202, 205 (*Ybarra* does not prohibit search of person not named in search warrant for premises where police have probable cause to suspect such person of criminal activity), *cert. denied*, 302 N.C. 630, 280 S.E.2d 441 (1981); *State v. Broadnax*, 98 Wash.2d 289, 654 P.2d 96,

103 (1982) (en banc; reading *Ybarra* and *Summers* together, persons not directly associated with premises and not named in warrant cannot be searched without some independent factors tying such persons to illegal activities being investigated); *State v. Avala*, 762 P.2d 1107, 1111 (Utah Ct.App.1988) (search warrant for premises does not authorize search of resident of those premises not named in search warrant, unless independent probable cause justifies search of that person), *cert. denied*, 773 P.2d 45 (Utah 1989); *see generally* 2 W. LaFave, *Search and Seizure*, § 4.5(c), (e) (1978 & Supp.1986). *But see Helms v. State*, 549 So.2d 598, 600 (Ala.Crim. App.1989) (*Ybarra* does not authorize strip search of person not specifically named in search warrant for premises, notwithstanding reasonable belief that person might be connected with drug activity), *cert. denied*, —— U.S. ——, 110 S.Ct. 725, 107 L.Ed.2d 744 (1990); *State v. Schultz*, 23 Ohio App.3d 130, 491 N.E.2d 735, 738 (1985) (*Ybarra* stands for proposition that search warrant for premises does not extend to search of persons found on premises absent reason to believe person is armed and dangerous).

Although an interjurisdictional conflict is relevant in determining whether the law was clearly established at the time of the search, it does not control this court's inquiry. *Garcia ex rel. Garcia v. Miera*, 817 F.2d 650, 658 (10th Cir.1987),

Defendants also argue that the officers' actions were permissible under K.S.A. § 22–2509, which provides:

In the execution of a search warrant the person executing the same may reasonably detain and search any person in the place at the time:

(a) To protect himself against attack, or

(b) To prevent the disposal or concealment of any things particularly described in the warrant.

Defendants contend that this statute authorizes the search of plaintiff in this case, and that Chief Parks, who claims to have relied on this statute at the time of the search, directed the search in subjective good faith.[6] Accordingly, defendants maintain that the officers' actions can be said to have violated clearly established law only if this court declares K.S.A. § 22–2509 to be unconstitutional—and, the court adds—if it further finds that it was objectively unreasonable for defendants to have relied on it.

The court does not construe its task to require the drastic action suggested by defendants. Even granting that a superficial reading of K.S.A. § 22–2509 might allow police officers to search persons merely as a precautionary measure against the destruction of evidence, this reading does not end the inquiry. Although a police officer may purport to act according to statutory law, this officer must understand that his conduct is also circumscribed by constitu-

tional principles. *See Martin v. Board of County Commissioners of Pueblo County,* 909 F.2d 402, 405 n. 3 (10th Cir.1990) (reasonable officers must know that statute commanding arrest of person named in warrant does not justify use of excessive force in making arrest); *Garcia ex rel. Garcia v. Miera,* 817 F.2d 650, 657 n. 9 (10th Cir.1987) (" '[c]onduct that is wrongful under section 1983 cannot be immunized by state law' "), *cert. denied,* 485 U.S. 959, 108 S.Ct. 1220, 99 L.Ed.2d 421 (1988). This is especially true in the law of searches and seizures, which is governed by an express constitutional provision that has received special attention by the courts. Because this area of the law is central to a police officer's duties, and is defined almost exclusively by the pronouncements of the courts, an officer must also be charged with knowledge of those clearly established fourth amendment principles delineated by the judiciary. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982) ("If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct."); *Melton v. City of Oklahoma City,* 879 F.2d 706, 731 (10th Cir. 1989) ("[O]fficials are presumed to know and abide by clearly established law."), *reh'g en banc granted in part,* 888 F.2d 724; *cf. Illinois v. Krull,* 480 U.S. 340, 107

---

*cert. denied,* 485 U.S. 959, 108 S.Ct. 1220, 99 L.Ed.2d 421 (1988); *Coriz ex rel. Coriz v. Martinez,* 915 F.2d 1469, 1470 (10th Cir.1990). Moreover, this conflict with other jurisdictions does nothing to diminish the fact that this case is controlled by precedent from this circuit " 'on all fours' factually with the case at bar"—a rare situation in which the existence of clearly established law unquestionably exists. *Melton v. City of Oklahoma,* 879 F.2d 706, 729 n. 36 (10th Cir.1989) (quoting *Dartlands v. Metropolitan Dade County,* 681 F.Supp. 1539, 1546 (S.D.Fla. 1988)), *reh'g en banc granted in part,* 888 F.2d 724. On the authority of *Ward,* which bears no legally significant factual distinctions from the case at hand, the court must conclude that the law of this circuit clearly prohibited the search of plaintiff absent a recognized exception to the warrant requirement. *See Garcia,* 817 F.2d at 657 (previous case with facts analogous to case sub judice was sufficient to put defendants on notice of law in this circuit).

**6.** Contrary to defendants' assertion, the subjective good faith of Chief Parks is irrelevant for purposes of determining qualified immunity. *Harlow v. Fitzgerald,* 457 U.S. 800, 815–19, 102 S.Ct. 2727, 2736–39, 73 L.Ed.2d 396 (1982); *Specht v. Jensen,* 832 F.2d 1516, 1525 (10th Cir. 1987), *judgment vacated on other grounds,* 837 F.2d 940 (1988) (en banc). Nonetheless, the Supreme Court has indicated that the *objective* good faith of an official may be relevant in assessing the reasonableness of this official's conduct. *Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 1873 n. 12, 104 L.Ed.2d 443 (1989); *United States v. Leon,* 468 U.S. 897, 922 n. 23, 104 S.Ct. 3405, 3420 n. 23, 82 L.Ed.2d 677 (1984). Thus, the court considers Chief Parks' reliance on K.S.A. § 22–2509 to the extent that this would bear upon the objective reasonableness of his decision to direct the search of plaintiff.

S.Ct. 1160, 94 L.Ed.2d 364 (1987) (exclusionary rule does not require suppression of evidence seized in objectively reasonable reliance on a statute authorizing warrantless administrative searches, where the constitutionality of this statute was untested at the time of the search and statute was not clearly unconstitutional). Thus, to the extent that Chief Parks relied on this statute as authorization for a search clearly proscribed by the fourth amendment—as interpreted by the courts—such reliance would be objectively unreasonable. *See State v. Lambert,* 238 Kan. 444, 450, 710 P.2d 693 (1985) (K.S.A. § 22–2509 is not an open-ended statute that diminishes constitutional rights of individuals, and legislature cannot by statute make a search warrant a general warrant to search).

■ Although the search warrant did not authorize the search of plaintiff, this warrantless search may be permissible if justified under a recognized exception to the warrant requirement. " '[T]he most basic constitutional rule' in the search and seizure area is that exceptions to the warrant requirement must be 'specifically established,' 'well delineated' and 'jealously and carefully drawn.' " *United States v. Aquino,* 836 F.2d 1268, 1270 (10th Cir.1988) (quoting *Coolidge v. New Hampshire,* 403 U.S. 443, 454–55, 91 S.Ct. 2022, 2031–32, 29 L.Ed.2d 564 (1971)). Even if probable cause exists to conduct a search, the fourth amendment requires that this determination be made by an impartial magistrate unless the warrantless search is justified by consent to search, search incident to an arrest, or exigent circumstances. *E.g., United States v. Smith,* 797 F.2d 836, 840 (10th Cir.1986) (citing cases); *Arkansas v. Sanders,* 442 U.S. 753, 758, 99 S.Ct. 2586, 2589, 61 L.Ed.2d 235 (1979) ("The mere reasonableness of a search, assessed in the light of the surrounding circumstances, is not a substitute for the judicial warrant required under the Fourth Amendment."). Thus, unless the search of plaintiff falls within an exception to the warrant requirement, this search was illegal.

Defendants argue extensively that "exigent circumstances" required the search of plaintiff's person without obtaining a warrant. The thrust of defendant's argument is that plaintiff's expressed need to use the bathroom presented the officers with several options demanding an immediate decision: (1) allow plaintiff to enter the bathroom alone—with the attendant risk that she would dispose of any evidence on her person; (2) refuse plaintiff's request to use the bathroom; or (3) allow the matron to accompany plaintiff into the bathroom, either to search plaintiff's clothing or to ensure that she did not attempt to destroy any evidence.[7] Confronted with this "emergency situation," defendants argue that they were not required to obtain a warrant for the search of plaintiff's person.

Exigent circumstances, such as danger to law enforcement officers or the risk of loss or destruction of evidence, may exist where the fourth amendment's strong preference for a determination by a neutral magistrate is outweighed by an identified need for immediate police action. *Sanders,* 442 U.S. at 759–60, 99 S.Ct. at 2590–91. The circumstances justifying this exception must be limited "to that which is necessary to accommodate the identified needs of society," *id.* at 760, 99 S.Ct. at 2591, and these needs will depend in part upon the gravity of the particular offense. *Welsh v. Wisconsin,* 466 U.S. 740, 750, 104 S.Ct. 2091, 2097, 80 L.Ed.2d 732 (1984); *Aquino,* 836 F.2d at 1271–72; *Bledsoe v. Garcia,* 742 F.2d 1237, 1241 (10th Cir.1984). Although the precise contours of the exigent circumstance exception to the warrant requirement remain unclear, *Aquino,* 836 F.2d at 1271, the types of emergency conditions that will fall under this exception are few. *Welsh,* 466 U.S. at 750, 104 S.Ct. at 2097 (citing cases that recognized "hot pursuit" of fleeing felon, destruction of evidence, and ongoing fire as emergencies within the exception). Generally, the exigent circumstance exception to the warrant requirement of the fourth amendment is available if: (1) the searching officer has reasonable grounds to believe that there is

---

**7.** The court notes the additional option of refusing plaintiff's request until another warrant authorizing a search of plaintiff could be obtained.

an immediate need for the search; (2) the search is not motivated by an intent to arrest and seize evidence; and (3) there is some reasonable basis, approaching probable cause, to associate an emergency with the area or place to be searched. *Smith,* 797 F.2d at 840; *see also Aquino,* 836 F.2d at 1272 (setting forth four factors relevant to exigent circumstance of fear of evidence destruction); *United States v. Rengifo-Castro,* 620 F.2d 230, 232 (10th Cir.1980) (probable cause to search plus exigent circumstances needed to justify warrantless search of luggage). Finally, the existence of exigent circumstances must be assessed according to the realities of the situation and " 'the circumstances as they would have appeared to prudent, cautious and trained officers.' " *United States v. Cuaron,* 700 F.2d 582, 586 (10th Cir.1983) (quoting *United States v. Erb,* 596 F.2d 412, 419 (10th Cir.), *cert. denied,* 444 U.S. 848, 100 S.Ct. 97, 62 L.Ed.2d 63 (1979)); *see also Creighton,* 483 U.S. at 640–41, 107 S.Ct. at 3039–40.

The court cannot agree that this search was a necessary response to an "exigent circumstance." It is, of course, firmly established that the fear of destruction of evidence, *Aquino,* 836 F.2d at 1271, or " '[t]he need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency.' " *Mincey v. Arizona,* 437 U.S. 385, 392, 98 S.Ct. 2408, 2413, 57 L.Ed.2d 290 (1978) (quoting *Wayne v. United States,* 318 F.2d 205, 212 (D.C.Cir. 1963)). To fall within this exception, however, the "warrantless search must be 'strictly circumscribed by the exigencies which justify its initiation'...." *Mincey,* 437 U.S. at 393, 98 S.Ct. at 2413 (quoting *Terry v. Ohio,* 392 U.S. 1, 25–26, 88 S.Ct. 1868, 1882–83, 20 L.Ed.2d 889 (1968)). In this case, the officers had secured the area and could have prevented plaintiff from destroying evidence by means other than subjecting her to a search of her person—such as refusing her request or obtaining a second warrant for her person. The court is unwilling to expand this limited exception to a situation that presented no genuine need for immediate police action.

Moreover, the "exigency" of this situation did not have its inception at the time plaintiff expressed a desire to use the bathroom. Assuming there is probable cause to believe that evidence of criminal activity may be found either on the premises or on a person, police officers also would have every reason to suspect that this person, if not searched, might simply wait to dispose of such evidence until the police have completed a lawful search and have then left the premises. Yet defendants would have the court believe that an exigency arises when this same suspect expresses the need to use the bathroom. Defendants' argument fails to consider that the very foreseeability of a suspect concealing evidence such as this on her person precludes a finding of "exigency." "[W]here the police know in advance the location of the evidence and intend to seize it, ... [t]he requirement of a warrant to seize imposes no inconvenience whatever, or at least none which is constitutionally cognizable in a legal system that regards warrantless searches as *'per se* unreasonable' in the absence of 'exigent circumstances.' " *Coolidge v. New Hampshire,* 403 U.S. 443, 470–71, 91 S.Ct. 2022, 2040–41, 29 L.Ed.2d 564 (1971) (plurality opinion); *see also Lavicky v. Burnett,* 758 F.2d 468, 475 (10th Cir.1985), *cert. denied,* 474 U.S. 1101, 106 S.Ct. 882, 88 L.Ed.2d 917 (1986); *Welsh,* 466 U.S. at 753, 104 S.Ct. at 2099 (exigency cannot be created simply because there is probable cause to suspect that a crime has been committed). In this case, the police had every opportunity to obtain a warrant for the search of plaintiff's person, both at the time when they made the original application, and when they thereafter realized that plaintiff might be concealing evidence of the crime on her person. *See United States v. Owens,* 782 F.2d 146, 152 (10th Cir.1986) (failure of police officers to secure a search warrant when they have repeated opportunities to do so "exemplifies the very type of official conduct the exclusionary rule is intended to deter"). Considering all of the circumstances confronting these officers, including the gravity of the offense, the court cannot say that this war-

rantless search of plaintiff was justified as an "exigent circumstance." [8]

■ Although the court has concluded that clearly established law prohibited expanding the scope of the search warrant, and that no true exigent circumstances could justify this search, it is possible that reasonable officers might mistakenly believe their actions to have been a necessary response to an emergency. In *Creighton*, the Court noted that the objective reasonableness of a particular warrantless search will often require a fact-specific inquiry into the information possessed by the searching officials. 483 U.S. at 641, 107 S.Ct. at 3039. The Court stated:

> We have recognized that it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials—like other officials who act in ways they reasonably believe to be lawful—should not be held personally liable. The same is true of their conclusions regarding exigent circumstances.

*Id.* (citing *Malley v. Briggs*, 475 U.S. 335, 344–45, 106 S.Ct. 1092, 1097–98, 89 L.Ed.2d 271 (1986)). Thus, as with the issue presented under the facts of *Creighton*, the relevant question in this case is "whether a reasonable officer could have

believed [the] warrantless search to be lawful, in light of clearly established law and the information the searching officers possessed." *Id.*

A recent case from the First Circuit not cited by the parties presents facts closely analogous to those here. In *Burns v. Loranger*, 907 F.2d 233 (1st Cir.1990), the police had obtained a search warrant for a certain residential address and "all persons found thereat." [9] The warrant was issued based upon police officers' surveillance of the residence and of three persons, including a Karen Burns, giving rise to probable cause to suspect that cocaine and other contraband was in the house. The police entered the house and began searching, initially, placing Burns on the kitchen floor. At some point, she was later allowed to sit at the kitchen table while the police searched the house. *Id.* at 235 n. 3. While sitting at the kitchen table, Burns twice asked to use the bathroom, but was denied permission until a female deputy sheriff could be summoned to conduct a strip search of plaintiff. The female deputy arrived and conducted a visual strip search of Burns but found nothing.

In defending against a subsequent § 1983 action, the defendant police officers justified the warrantless strip search of Burns under the exigent circumstance ex-

---

**8.** Of possible relevance to this case is the principle that searches incident to an arrest may occur before the formal arrest of a person, "[w]here the formal arrest follow[s] quickly on the heels of the challenged search of [the] person...." *Rawlings v. Kentucky*, 448 U.S. 98, 111, 100 S.Ct. 2556, 2564, 65 L.Ed.2d 633 (1980); *see also United States v. Gay*, 774 F.2d 368, 378 (10th Cir.1985). Such a search must be supported by probable cause to arrest at the time of the search and must not exceed the scope of this exception. *See Cupp v. Murphy*, 412 U.S. 291, 294–95, 93 S.Ct. 2000, 2003–04, 36 L.Ed.2d 900 (1973) (fear of the destruction of evidence justifies search only of area within arrestee's immediate reach); *United States v. Matthews*, 615 F.2d 1279, 1286 n. 11 (10th Cir.1980); *United States v. Salazar*, 805 F.2d 1394, 1399 (9th Cir. 1986). In addition, this variant of the search incident to arrest exception requires circumstances justifying the belief by the person searched that he or she is not free to leave at the time of the search. *United States v. Rivera*, 867 F.2d 1261, 1264–65 (10th Cir.1989); *Gay*, 774 F.2d at 378.

The court does not believe that this exception is available to defendants. It is apparent that the police investigation gave the officers probable cause to arrest plaintiff, and that plaintiff had the same apprehension and motivation to destroy evidence within her grasp that attends any formal arrest. But the formal arrest of plaintiff did not take place on the night of this search, and the court cannot say that an arrest of plaintiff sometime after the night of the search "followed quickly on the heels" of the challenged search. *Cf. Cupp v. Murphy*, 412 U.S. 291, 93 S.Ct. 2000, 36 L.Ed.2d 900 (1973) (upholding limited search of suspect's fingernails even though formal arrest did not take place until one month after warrantless search).

**9.** The court did not discuss the legality of this blanket authorization to search all persons at the premises and assumed for purpose of the appeal that the warrant did not authorize a search of plaintiff. 907 F.2d at 234 n. 2.

ception. Without addressing the actual legality of the search, the court of appeals agreed with defendants, holding that under the circumstances, a reasonable officer could "conclude that there was sufficient urgency to necessitate a warrantless strip search before Burns was able to dispose of incriminating evidence." 907 F.2d at 238. The focus of the perceived "exigency," however, was not on the possibility that plaintiff might dispose of evidence if allowed to enter the bathroom unaccompanied. Rather, the court found that officers might reasonably consider plaintiff's requests to enter the bathroom to have been prompted not "by the call of nature," but by the desire to be alone. *Id.* Thus, plaintiff's requests were among the other factors supporting a reasonable belief that plaintiff might "furtively" destroy evidence on her person if not searched immediately. The court concluded:

> Although the defendant officers may have been mistaken in their belief that Burns may have been able to dispose of a small amount of cocaine if she were not strip-searched before a warrant could be obtained, we cannot say that their belief was not objectively reasonable in these extraordinary circumstances.

*Id.*

To be sure, there are some differences between the facts of *Burns* and those presented here. In contrast to this case, it is unclear from the facts of *Burns* whether officers there had reason to expect at the time the warrant was obtained that the plaintiff would be on the premises. Thus, the police in *Burns* might reasonably have thought that their failure to obtain a warrant to search Burns was excused by the inability to know in advance whether Burns would be at this house. In addition, it might be argued that the fear of "furtive" disposal of currency during a house search does not rise to the level of objective reasonableness as easily as does as the fear of the disposal of cocaine. In the court's

view, however, these are distinctions without significance. The excerpts of deposition testimony submitted by the parties indicate that plaintiff was relatively free to roam the house while the police conducted the search. Plaintiff has presented no evidence to suggest that a fear of the surreptitious disposal of evidence by plaintiff would be objectively unreasonable under the circumstances. The court must be mindful of "the difficulty of determining whether particular searches or seizures comport with the Fourth Amendment," *Creighton,* 483 U.S. at 644, 107 S.Ct. at 3041, and that "an apparently small difference in the factual situation frequently is viewed as a controlling difference in determining Fourth Amendment rights." *Arkansas v. Sanders,* 442 U.S. 753, 757, 99 S.Ct. 2586, 2589, 61 L.Ed.2d 235 (1979). Although this search could not withstand constitutional scrutiny in the context of a suppression hearing, the special deference afforded by the defense of qualified immunity persuades the court that reasonable officers could mistakenly believe that an immediate search was necessary to prevent plaintiff from destroying evidence.[10]

This conclusion necessarily disposes of the claims against the mayor and city council members in their individual capacity. To establish personal liability against these individuals, plaintiff must demonstrate that these city officials acted as supervisors who had some "affirmative link"—whether through personal participation, exercise of control or direction, or a failure to supervise—to the deprivation of plaintiff's constitutional rights. *Specht v. Jensen,* 832 F.2d 1516, 1524 (10th Cir.1987), *judgment vacated on other grounds,* 837 F.2d 940 (1988) (en banc); *see also O'Rourke v. City of Norman,* 875 F.2d 1465, 1476 (10th Cir. 1989). Even assuming the existence of such an affirmative link in this case, the court has concluded that the individual officers could reasonably have believed their actions to have been legal. It follows *a*

---

**10.** The searching officers' "subjective beliefs about the search are irrelevant." *Creighton,* 483 U.S. at 641, 107 S.Ct. at 3040. Thus, the court's conclusion is not defeated merely because the officers in this case did not base their decision to search plaintiff upon a fear of destruction of evidence *before* she entered the bathroom. Under the standards of *Harlow* and *Creighton,* it is only relevant that reasonable officers *could* justify the search of plaintiff upon such a fear.

*fortiori* that the city officials, even if they had personally directed this search, are also entitled to qualified immunity for the actions of police officers who acted reasonably under the circumstances.

## II. *Punitive Damages Against Defendant Ryan*

■ Plaintiff has also made a claim for punitive damages against Ms. Ryan. Punitive damages are available under § 1983 "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56, 103 S.Ct. 1625, 1640, 75 L.Ed.2d 632 (1983). Although police officers who conduct an illegal warrantless search in violation of clearly established law may be liable for actual damages, evidence of malice, wantonness of oppressiveness is necessary to justify punitive damages. *Lavicky*, 758 F.2d at 477. In this case, the court has determined that the officers' conduct was reasonable under the circumstances. Plaintiff has directed the court's attention to no evidence that would so much as suggest either evil intent or a reckless indifference to plaintiff's constitutional right against illegal searches and seizures. Instead, plaintiff labels this a question of fact for the jury that may not be dismissed on a motion for summary judgment. It is well established, however, "that the issue of the sufficiency of evidence to justify an award of punitive damages is an issue of law for the court." *Jackson v. Pool Mortgage Co.*, 868 F.2d 1178, 1182 (10th Cir.1989). Thus, the court will dismiss the claim for punitive damages against defendant Ryan.

## III. *The City*

Plaintiff also seeks damages directly from the City of St. John, the mayor, and individual council members in their official capacity. Regardless of the reasonableness of the officers' actions under clearly established law at the time of the search, the defense of qualified immunity is unavailable to the city. *Ross v. Neff*, 905 F.2d 1349, 1355 (10th Cir.1990) (citing *Owen v. City of Independence*, 445 U.S. 622, 638,

100 S.Ct. 1398, 1409, 63 L.Ed.2d 673 (1980)). " '[W]hen execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury ... the government as an entity is responsible under § 1983.' " *Melton v. City of Oklahoma*, 879 F.2d 706, 723 (10th Cir.1989) (quoting *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978)), *reh'g en banc granted in part*, 888 F.2d 724. If a challenged policy is not unconstitutional in itself, a single incident of unconstitutional activity will not expose a municipality to liability. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24, 105 S.Ct. 2427, 2436–37, 85 L.Ed.2d 791 (1985) (plurality opinion); *Meade v. Grubbs*, 841 F.2d 1512, 1529 (10th Cir.1988). However, " 'where action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly.' " *Grubbs*, 841 F.2d at 1529 (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480, 106 S.Ct. 1292, 1298, 89 L.Ed.2d 452 (1986) (plurality opinion)). Implicit in this formulation is the prerequisite that the actions or inactions alleged to have resulted in the constitutional violation be made by an official who has final authority, as determined by state law, to make municipal policy or decisions on the challenged subject matter. *See generally Pembaur*, 475 U.S. 469, 106 S.Ct. 1292 (plurality opinion); *City of St. Louis v. Praprotnik*, 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988) (plurality opinion).

■ Plaintiff seeks to impose liability upon the city for the failure of the mayor and the city council members to train the City's police officers. The Supreme Court has expressly recognized the possibility of finding a "custom or policy" in a municipality's failure to train its employees in a relevant aspect of their duties. *City of Canton v. Harris*, 489 U.S. 378, 109 S.Ct. 1197, 1205, 103 L.Ed.2d 412 (1989). Liability under such a theory will attach, however, "only where the failure to train amounts to deliberate indifference to the

rights of persons with whom the police come into contact." *Id.* 109 S.Ct. at 1204. In addition, if such indifference is established, "the identified deficiency in a city's training program must be closely related to the ultimate injury." *Id.* at 1206; *see also Monell,* 436 U.S. at 694–95, 98 S.Ct. at 2037.

For several reasons, the court must reject plaintiff's attempts to impose liability upon the City for the omissions of the mayor and the city council members. First, plaintiff has produced no evidence that these officials have any duty or authority to supervise the training of the City's police officers.[11] Thus, it is unclear whether the inaction of these officials constitute "acts that are, properly speaking, acts 'of the municipality'...." *Pembaur,* 475 U.S. at 480, 106 S.Ct. at 1298; *see also Starrett v. Wadley,* 876 F.2d 808, 819 (10th Cir.1989).

More important is the absence of any indication that the alleged deficiencies in the city council's supervision of its police officers actually caused the constitutional injury in this case. In *Harris* the Court emphasized the heavy burden placed upon the plaintiff to attribute the deprivation to the lack of adequate training by the municipality. 109 S.Ct. at 1206; *see also D.T. ex rel. M.T. v. Independent School No. 16 of Pawnee County,* 894 F.2d 1176, 1188 (10th Cir.) (under *Harris,* school district could be held liable "only if plaintiffs demonstrated a *direct causal connection* between the hiring, investigative, and supervising policy in question and the alleged constitutional deprivation;" emphasis in original), *cert. denied,* —— U.S. ——, 111 S.Ct. 213, 112 L.Ed.2d 172 (1990). As already determined, reasonable officers could conclude that the warrantless strip search of plaintiff was justified as a response to exigent circumstances. This raises considerable doubts as to whether additional training by the City could have better prepared the officers for the task at hand.[12] In addition, proof that better or more training could have prevented the injury does not render adequate training inadequate, since a plaintiff could almost always make this claim with respect to a particular police encounter resulting in injury. *Harris,* 109 S.Ct. at 1206. Although the city did not provide any search and seizure training to its police officers, Chief Parks had in fact received, and continued to receive, extensive training on these matters through the state law enforcement academy at Hutchinson, as well as through his studies in obtaining an associate of arts degree in criminal justice. Plaintiff has produced no evidence to contradict the deposition testimony and supporting documentation submitted by defendants regarding the training of Chief Parks, but instead labels the issue of inadequate training a jury question.[13] In a sim-

---

**11.** Both parties have failed to address the critical question of whether the mayor or city council members even possess final policy authority over the training of the city's police officers. *See Grubbs,* 841 F.2d at 1528–29 (county commissioners could not be held liable for sheriff deputies' alleged use of excessive force because state law did not impose duty on commissioners to supervise or discipline sheriff and deputies). Nonetheless, the parties will be given the opportunity to address this issue in light of the court's finding that the actions of Chief Parks, if they represent final municipal policy, may expose the city to liability.

**12.** On the basis of the objective reasonableness of the officers' actions alone, the *Burns* court found no causal connection between any deficient city policy concerning strip searches and the deprivation of the plaintiff's fourth amendment rights. 907 F.2d at 239. This court's decision does not sweep so broadly. The danger with the approach of the court in *Burns* is

that it will always allow municipalities to escape liability whenever the court determines that the individuals inflicting the constitutional injury are qualifiedly immune. Thus, under the banner of "causation," the First Circuit's approach effectively provides municipalities with the defense of qualified immunity, despite the Supreme Court's refusal to extend such immunity to municipalities in *Owen v. City of Independence,* 445 U.S. 622, 638, 100 S.Ct. 1398, 1409, 63 L.Ed.2d 673 (1980). For this reason, the court does not exclude the possibility that different circumstances might present a sufficient question of fact regarding causation for an objectively reasonable deprivation of constitutional rights, but instead confines its ruling to the present facts.

**13.** Plaintiff has presented sufficient evidence to raise an issue of fact regarding the adequacy of Ms. Ryan's search and seizure training, which appears to have consisted of a single morning of instruction some years earlier by watching a

ilar context, the Tenth Circuit has held that "[o]nly by countering with evidence that the training or procedures were defective could [plaintiff] ... raise[ ] an issue of fact whether this duty was breached." *McClelland v. Facteau*, 610 F.2d 693, 697 (10th Cir.1979). Considering the objective reasonableness of the search, the extensive training actually received by Chief Parks, and the lack of any supporting proof that better training could have prevented the illegal search, the court concludes that plaintiff has failed to establish the existence of a genuine issue of fact regarding municipal liability based upon the inaction of the city council members.

■ Although the failure of the city council to train its officers provides no basis for imposing liability on the municipality, this does not preclude the possibility of municipal liability based on action taken by another city official. Notwithstanding the absence of any official policy or custom, a single unconstitutional act taken by a city official who possesses final authority over the challenged subject matter is sufficient to hold the municipality liable. *Pembaur*, 475 U.S. at 480, 106 S.Ct. at 1298. Courts have often recognized the final policy or decision making authority of police chiefs or sheriffs such that their actions can be said to represent actions taken by the governmental units they represent. *E.g., Flanagan v. Munger*, 890 F.2d 1557, 1568–69 (10th Cir.1989); *Ross*, 905 F.2d at 1355 (sheriff's testimony that he believed arrests in Indian territory were legal presented question of fact whether county had custom or policy regarding such arrests); *Grubbs*, 841 F.2d at 1530 (sheriff, and not county and state officials, responsible for supervision of sheriff and deputies); *McKay v. Hammock*, 730 F.2d 1367, 1375 (10th Cir.1984); *Lee v. Wyandotte County*, 586 F.Supp. 236, 241 (D.Kan.1984). In this case, Chief Parks is the obvious

official who might speak with final authority regarding the searches carried out by the City's police force. If this assumption is correct, then there can be no doubt that the illegal search is attributable to this final policymaker: Chief Parks was the very person who directed the search of plaintiff.

As the Supreme Court made clear in *Pembaur*, state and local law determines whether a particular official is vested with final policy making authority in a particular area of a city's business. 475 U.S. at 482–83 & n. 12, 106 S.Ct. at 1299–1300 & n. 12; *see also Praprotnik*, 108 S.Ct. at 924. In identifying those local officials responsible for the challenged action or policy, the trial court must review "the relevant legal materials, including state and local positive law, as well as ' "custom or usage" having the force of law.' " *Jett v. Dallas Independent School Dist.*, 491 U.S. 701, 109 S.Ct. 2702, 2723, 105 L.Ed.2d 598 (1989) (whether a particular official has final authority over a matter is an issue of law for the court). Because neither party has briefed this issue, however, the court is unable to determine whether Chief Parks in fact did possess final municipal authority over the challenged action. Although plaintiff's complaint does not allege that Chief Parks is being sued in his official capacity, plaintiff clearly states that she is suing the City itself. *See Kentucky v. Graham*, 473 U.S. 159, 167 n. 14, 105 S.Ct. 3099, 3106 n. 14, 87 L.Ed.2d 114 (1985) (unnecessary to bring official capacity actions against local officials because suits directly against the local government units are cognizable); *Monell*, 436 U.S. at 690 n. 55, 98 S.Ct. at 2035 n. 55 (official capacity suits are only one way of pleading an action against a governmental entity). For this reason, the court will allow plaintiff the opportunity to submit further legal memoranda and supporting documentation within 30 days of this order regarding the

---

film and reading a studyguide. However, it is undisputed that Ms. Ryan conducted this search only upon the express direction of Chief Parks. Thus, to find a causal connection between the arguably inadequate training of Ms. Ryan and the illegal search, plaintiff would have to establish that better training would have alerted Ms.

Ryan to the illegal nature of such a search *and* that such training would also have persuaded her to defy the directions of her superior. The court believes that such inferences strain rational thought and would be insupportable under even the most generous standard of proof.

issue of Chief Parks' authority over the search and seizure policies of the city.

The court notes that there is nothing inherently inconsistent with a finding that an official is entitled to qualified immunity—because his actions were reasonable under the law and circumstances confronting him—while holding a municipality liable for his constitutional violations if caused by the actions of those persons who speak with final authority on the challenged matter. *Watson v. City of Kansas City,* 857 F.2d 690, 697 (10th Cir.1988).

> While it would be improper to allow a suit to proceed against the city if it was determined that the officers' action did not amount to a constitutional violation, there is nothing anomalous about allowing such a suit to proceed when immunity shields the individual defendants.

*Id.* (citation omitted); *see also Flanagan,* 890 F.2d at 1568–69 (police chief could not reasonably have known that his actions were illegal, yet municipality could be liable for his actions insofar as chief was final policymaker). Because the court has determined that the search of plaintiff violated her constitutional rights against unreasonable warrantless searches, the City may be called to account for this violation.

## IV. *Damages*

Defendants also move for summary judgment on a portion of plaintiff's damage claim. Plaintiff seeks to recover damages in the amount of $22,318.35 for the expenses associated with defending against the state criminal action brought against her. Defendants contend that these damages were not proximately caused by the illegal strip search because plaintiff's prosecution did not result from any evidence seized from her person. Plaintiff offers no opposition to this argument, and the motion will be granted.

## V. *Conclusion*

The court finds that each defendant sued as an individual herein is entitled to summary judgment on the grounds of qualified immunity. The court will defer ruling on the liability of the City until the parties have had the opportunity to address this issue as identified in this order. Plaintiff shall have 30 days to submit additional briefing on this matter. If the actions of Chief Parks can be said to represent a final municipal decision in this matter, then summary judgment in favor of the City would be inappropriate.

IT IS BY THE COURT THEREFORE ORDERED that defendants' motion for summary judgment (Dkt. 32) be granted as to each defendant named herein sued in their individual capacity.

IT IS FURTHER ORDERED that defendant Ryan's motion to dismiss the claim for punitive damages be granted.

IT IS FURTHER ORDERED that defendants' motion to dismiss plaintiff's claim for damages incurred in defending against the criminal action be granted.

IT IS FURTHER ORDERED that the motion of defendant City of St. John for summary judgment be denied.