UNITED STATES of America, Plaintiff,

v.

Mark BRINSON, William John Baresch, and Keith Thomas Stierman, Defendants.

Crim. A. Nos. 90–10074–01, 90–10074–02 and 90–10074–03.

United States District Court, D. Kansas.

April 18, 1991.

Robin Fowler, Asst. U.S. Atty., for U.S.

Charles Anderson, Federal Public Defender, Wichita, Kan., for Mark Brinson.

John S. Womack, Wichita, Kan., for William John Baresch.

Tim Scimeca, Wichita, Kan., for Keith Thomas Stierman.

## MEMORANDUM AND ORDER

THEIS, District Judge.

This matter is before the court on the motions of all defendants to sever, and to suppress evidence allegedly seized in violation of defendants' fourth amendment rights. On April 16, 1991, the court entertained oral argument on the motions but reserved decision. The court has considered the briefs of the parties and is now prepared to rule.

The challenged searches were conducted pursuant to three search warrants. The first warrant was for the search of the residence of one Arthur Pilant for evidence of the manufacture of amphetamine. In support of this warrant, Agent Craig Stansberry of the Drug Enforcement Agency submitted an affidavit setting forth his investigation of Pilant's activities indicating that evidence of amphetamine manufacture would be found at Pilant's residence. The magistrate issued the requested warrant, which was executed the same day. After searching the residence of Pilant, and apparently as a result of this search, Pilant decided to cooperate with Drug Enforcement agents. Pilant's cooperation with these agents led to an application for two more search warrants. The court sets forth the substance of the affidavit in support of these warrants.

Pilant informed Agent Stansberry that he had been purchasing lead acetate for "Mark" for a period of several months, and that Mark had been using this chemical for the manufacture of amphetamine. Pilant arranged for a meeting at his residence between himself and all three defendants, and this meeting was recorded through a concealed transmitting device. With the aid of this device, agent Stansberry heard "the people talking about the lead acetate," and "also heard the people talking about some amphetamine that had been recently manufactured in the Wichita area." This agent then observed the three defendants leave Pilant's residence in a pickup, and the agent followed them to the Corral Motel. Agent Troy Derby had earlier observed Pilant together with Baresch at the motel, and had discovered that Room 14 of the Corral Motel was registered in the name of defendant Baresch. All three defendants were arrested in the motel parking lot,[1] and a search of the pickup yielded a bottle of lead acetate in a tool box. Thereafter, Agent Stansberry returned to Pilant's residence to interview him. Pilant informed the agent that "at one point in the negotiations, Baresch turned to Stierman and asked him about some mercuric chloride.... Stierman responded that the mercuric chloride was in a tennis shoe at the motel room."

After defendants were arrested, the agents also found certain items in Baresch's billfold. The affidavit states:

[A]gent Larry Nichols found a key, a photograph of a woman and a small child, and a receipt of a storage unit located at 6209 West Kellogg in Wichita, Kansas. Baresch told [Special Agent] Nichols the woman in the photograph was his wife, Kimberly Baresch. [Spe-

---

1. Defendants do not challenge this warrantless arrest.

cial Agent] Nichols then proceeded to this location and discovered it was the F S U–Store It. The agent contacted the Manager of the business and she later saw the photograph of Kimberly Baresch and recognized her to be the leaser of Unit L–11. The Manager told the agent that she leased the unit using the name of Jane Bleedsoe. [Special Agent] Nichols then checked the key that was removed from Baresch's billfold and discovered that it fit the lock to Unit L–11. [Special Agent] Michael Upchurch also checked Baresch in the NADDIS computer system. This system maintains detailed records of persons suspected of drug trafficking. He discovered records that indicated that William Baresch had used storage units in the past to store chemicals used in the manufacture of amphetamine.

Based upon this information, the magistrate issued a warrant for the search of the motel room registered in Baresch's name, and another warrant for a search of the rental unit leased to Baresch's wife. The agents executed these warrants and found amphetamine, marijuana, a container of mercuric chloride, and various items allegedly capable of manufacturing false identification.

Defendants move to suppress all evidence seized pursuant to the warrants for the motel room and the storage unit on the grounds that (1) they were issued based upon evidence that was "fruit of the poisonous tree," *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); and (2) probable cause was lacking to issue the warrants. As an initial matter, the government disputes defendants' standing to challenge the legality of the search of Pilant's residence. The court assumes that the search of Pilant's residence failed to satisfy the demands of the fourth amendment.

■ Fourth amendment rights against unreasonable searches and seizures are personal and may not be asserted vicariously. *Rakas v. Illinois,* 439 U.S. 128, 133–34, 99 S.Ct. 421, 425, 58 L.Ed.2d 387 (1978). Even if evidence has been obtained through the violation of the fourth amendment rights of some third party, a court may not suppress this evidence unless the defendant proves that his personal fourth amendment rights were implicated by the search. *United States v. Rubio–Rivera,* 917 F.2d 1271, 1274 (10th Cir.1990); *United States v. Rascon,* 922 F.2d 584, 586 (10th Cir.1990); *United States v. Erwin,* 875 F.2d 268, 270 (10th Cir.1989). Thus, if evidence supporting an affidavit for a search warrant was not obtained in violation of the defendant's personal fourth amendment rights, the fact that such evidence may have violated another person's rights does not exclude it from the probable cause determination as to the search warrant for the defendant. *See United States v. Rodriguez–Pando,* 841 F.2d 1014, 1017 (10th Cir.1988) (no standing to contest allegedly false statements contained in separate affidavit for search of codefendant's urine).

■ Defendants do not dispute that they must have standing to assert a particular fourth amendment violation. Rather, defendants contend that the search of Pilant's residence was illegal, that any evidence obtained through this search was fruit of a poisonous tree, and therefore, that the magistrate could not rely on this evidence in support of his probable cause finding for the subsequent search warrants. The difficulty with defendants' argument, however, is that it attempts to avoid the requirement of standing by invoking the *Wong Sun* doctrine. Standing is a prerequisite to a fourth amendment challenge regardless of whether the illegal search itself directly yields the inculpating evidence or merely supplies the initial catalyst in a reaction ultimately producing such evidence. To use the metaphor, defendants have no standing to object to consideration of the fruit of a poisonous tree that police officers planted in someone else's orchard. Thus, the court considers only the objections directed to the search warrants for the motel room and the rental unit.

■ Defendants correctly note that in determining the existence of probable cause to issue a warrant, the reviewing court may look only to the information

submitted to the magistrate in support of the warrant application. *Whiteley v. Warden, Wyoming State Penitentiary*, 401 U.S. 560, 565 n. 8, 91 S.Ct. 1031, 1035 n. 8, 28 L.Ed.2d 306 (1971); *Spinelli v. United States*, 393 U.S. 410, 413 n. 3, 89 S.Ct. 584, 587 n. 3, 21 L.Ed.2d 637 (1969); *Aguilar v. Texas*, 378 U.S. 108, 109 n. 1, 84 S.Ct. 1509, 1511 n. 1, 12 L.Ed.2d 723 (1964); *United States v. Brewer*, 630 F.2d 795, 803 (10th Cir.1980). The task of the reviewing court is to determine whether there is a substantial basis to support the magistrate's finding of probable cause to issue the warrant. *New York v. P.J. Video, Inc.*, 475 U.S. 868, 876, 106 S.Ct. 1610, 1615, 89 L.Ed.2d 871 (1986); *St. John v. Justmann*, 771 F.2d 445, 448 (10th Cir.1985). Probable cause is "based upon a common-sense reading of the entire affidavit," *Spinelli*, 393 U.S. at 415, 89 S.Ct. at 588, under the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). The existence of probable cause does not turn on whether the government has established a *prima facie* case of criminal activity, *Spinelli*, 393 U.S. at 419, 89 S.Ct. at 590, but only "whether, given all the circumstances set forth in the affidavit before [the magistrate], including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238, 103 S.Ct. at 2332. The court may rely on evidence that is not legally competent in a criminal trial and may consider any "reasonably trustworthy information." *Easton v. City of Boulder*, 776 F.2d 1441, 1450 (10th Cir.1985), *cert. denied*, 479 U.S. 816, 107 S.Ct. 71, 93 L.Ed.2d 28 (1986). The reviewing court should avoid grudging attitudes toward the magistrate's finding of probable cause, *United States v. Ventresca*, 380 U.S. 102, 108, 85 S.Ct. 741, 745, 13 L.Ed.2d 684 (1965), and should defer to this finding if there is a substantial basis supporting it. *United States v. Leon*, 468 U.S. 897, 914, 104 S.Ct. 3405, 3416, 82 L.Ed.2d 677 (1984); *United States v. Ross*, 920 F.2d 1530, 1534 n. 5 (10th Cir.1990).

■ Defendants have raised vague allegations that the information contained in the affidavit is untrue. To the extent that this is construed as a motion for a *Franks* hearing, defendants have failed to set forth the detailed and specific allegations necessary to challenge the truthfulness of statements contained in the affidavit. *See Franks v. Delaware*, 438 U.S. 154, 171–72, 98 S.Ct. 2674, 2684, 57 L.Ed.2d 667 (1978); *United States v. Sullivan*, 919 F.2d 1403, 1424 (10th Cir.1990); *United States v. Sporleder*, 635 F.2d 809, 813 (10th Cir. 1980). Thus, the court considers only the information contained in the affidavit supporting the application for the warrant.

■ Defendants object to any reliance on the information supplied by Pilant on the ground that the affiant does not allege any personal knowledge supporting Pilant's credibility—such as past experience with this particular informant. Defendants' argument suggests an approach that was rejected by the Court in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). In *Gates*, the Court held that an affidavit need not necessarily set forth the basis for the informant's "veracity" and "basis of knowledge," and that the reviewing court should examine information disclosed by an informant under the "totality of the circumstances." *Id.* at 233–34, 103 S.Ct. at 2329. Among the circumstances enhancing the reliability of information supplied by an informant is the fact that the information also implicates the informant in criminal activity, and is thus an admission against interest. *United States v. Harris*, 403 U.S. 573, 583–84, 91 S.Ct. 2075, 2081–82, 29 L.Ed.2d 723 (1971) (plurality opinion); *United States v. Sporleder*, 635 F.2d 809, 812 (10th Cir. 1980); *United States v. Gorel*, 622 F.2d 100, 104 (5th Cir.1979), *cert. denied*, 445 U.S. 943, 100 S.Ct. 1340, 63 L.Ed.2d 777 (1980); *United States v. Cambindo*, 609 F.2d 603, 633 (2d Cir.1979), *cert. denied*, 446 U.S. 940, 100 S.Ct. 2163, 64 L.Ed.2d 795 (1980). The focus at all times is on the reliability of the information supplied, only one factor of which may be the informant's credibility—as learned through previous experience.

■ Each defendant also argues that the information contained in the affidavit was insufficient to establish a finding of probable cause as to them. Whether probable cause existed to suspect each individual defendant of criminal activity, however, is irrelevant to the issue of probable cause to search the subjects of these search warrants: Room 14 of the Corral Motel and Unit L–11 at the storage rental. With regard to a search warrant for a location, the only inquiry is whether there is a substantial probability that a crime has been committed, and that evidence of this crime may be found at a specific location. *See Gates,* 462 U.S. at 238, 103 S.Ct. at 2332; *United States v. Storage Spaces Designated Nos. 8 & 49,* 777 F.2d 1363, 1365 (9th Cir.1985), *cert. denied,* 479 U.S. 1086, 107 S.Ct. 1291, 94 L.Ed.2d 148 (1987).

■ Viewing the entire affidavit, the court finds sufficient information to support a probable cause determination that the illegal manufacture of amphetamine was afoot. The statement by Pilant that "Mark" had been purchasing lead acetate from him for the manufacture of amphetamine also implicated Pilant in criminal activity, and this fact supports the reliability of the statement. Subsequently, and under the surreptitious surveillance of DEA agents, all three defendants met with Pilant where "lead acetate" and the manufacture of amphetamine in Wichita was discussed. Pursuant to their arrest, a bottle of lead acetate was discovered in the tool box of the pickup in which defendants were riding. Finally, Pilant's statements to Agent Stansberry after the arrest of defendants indicate that both Baresch and Stierman were personally aware of the existence of lead acetate in the motel room.

The court also finds that the information in the affidavit supports a finding of probable cause with respect to the motel room. At the time of their arrest in the parking lot of the motel, a container of lead acetate was discovered in the pickup in which defendants had been traveling. Moreover, and of particular significance, Stierman had stated at the meeting immediately preceding the arrests that mercuric chloride was in a tennis shoe at the motel room. This information was sufficient to establish a fair probability that evidence of illegal amphetamine manufacture would also be found in the motel room. *See United States v. Holzman,* 871 F.2d 1496, 1506 (9th Cir.1989) (hotel keys and rental car indicated limited resources for storage of personal possessions).

■ There was also a substantial basis for issuing the warrant for the rental unit.[2] The affidavit reveals three facts regarding the rental unit: (1) the unit was leased to defendant Baresch's wife under an alias; (2) Baresch possessed a key for the unit; (3) and an inquiry through the N.A.D.D.I.S. computer system disclosed that Baresch had previously used rental units for the storage of chemicals used in the manufacture of amphetamine.[3] Together with the

---

2. Only Baresch has made any showing of standing to object to an illegal search of the storage unit. Baresch carried the key to the rental unit, which, albeit under an alias, was leased to his wife. The court finds this sufficient to establish the standing of Baresch. Neither Stierman nor Brinson, however, has alleged or proven that they had a possessory interest in the storage unit or otherwise any legitimate expectation of privacy at this location. *See United States v. Salvucci,* 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980) ("automatic standing" is not a constitutionally recognized doctrine, and a defendant must allege and establish that his personal fourth amendment rights have been violated); *United States v. Arango,* 912 F.2d 441, 445 (10th Cir.1990) (property law relevant but not always dispositive on issue of defendant's reasonable expectation of privacy), *cert. denied,* —— U.S. ——, 111 S.Ct. 1318, 113 L.Ed.2d 251 (1991).

3. Notwithstanding defendants' failure to comply with Department of Justice regulations regarding the disclosure of information contained in the N.A.D.D.I.S. computer system, the court reviewed *in camera* the N.A.D.D.I.S. computer printout referenced in the affidavit. At the hearing, counsel for Brinson voiced a general concern regarding the use of such information in affidavits supporting the application for search warrants. As the court understands it, officers use this computer system as an investigative tool to determine whether other law enforcement officers have ever associated the individual under investigation with criminal activity. Without contacting the enforcement agency that reported this individual, however, the investigating officer may have no way of determining the extent or the nature of a criminal "association" that is only briefly reported. The fact that N.A.D.D.I.S. may be a reliable and valuable in-

evidence indicating that defendants were engaging in the illegal manufacture of amphetamine, this information provides a sufficient basis for a finding that evidence of the illegal amphetamine operation might be found at the rental unit. *See United States v. Yarbrough,* 852 F.2d 1522, 1532–33 (9th Cir.1988) (probable cause existed to search storage locker); *United States v. Zolp,* 659 F.Supp. 692, 713–14 (D.N.J.1987) (storage units leased under alias names supported probable cause).

■ If any doubt remained, the court also finds that this evidence is also admissible under the "good faith exception." Even where the reviewing court finds no probable cause to support the warrant, and "[i]n the absence of an allegation that the magistrate abandoned his detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." *United States v. Leon,* 468 U.S. 897, 926, 104 S.Ct. 3405, 3422, 82 L.Ed.2d 677 (1984). " '[A] warrant issued by a magistrate normally suffices to establish' that a law enforcement officer has 'acted in good faith in conducting the search.' " *Id.* at 922, 104 S.Ct. at 3420 (quoting *United States v. Ross,* 456 U.S. 798, 823 n. 32, 102 S.Ct. 2157, 2172 n. 32, 72 L.Ed.2d 572 (1982)). Moreover, "[t]he court must be mindful of 'the difficulty of determining whether particular searches or seizures comport with the Fourth Amendment,' and that 'an apparently small difference in the factual situation frequently is viewed as a controlling difference in determining Fourth Amendment rights.' " *Munz v. Ryan,* 752 F.Supp. 1537, 1547 (D.Kan.1990) (citations omitted). Thus, even assuming that probable cause to search the motel room and storage unit did not exist, the court would be unable to say that the affidavit was " 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.' " *Leon,* 468 U.S. at 923, 104 S.Ct. at 3421.

■ Defendants have also moved to sever their respective cases from their co-defendants, arguing that the evidence with respect to their case is insubstantial. Defendants charged jointly under Fed.R. Crim.P. 8 " 'are not entitled to separate trials as a matter of right.' " *United States v. Cardall,* 885 F.2d 656, 667 (10th Cir.1989) (quoting *Bailey v. United States,* 410 F.2d 1209, 1213 (10th Cir.), *cert. denied* 396 U.S. 933, 90 S.Ct. 276, 24 L.Ed.2d 232 (1969)). The court retains discretion in determining whether the prejudice to the defendant from a joint trial is outweighed by the expense and inconvenience of separate trials. *United States v. Lane,* 883 F.2d 1484, 1498 (10th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 872, 107 L.Ed.2d 956 (1990). "Severance may be necessary when defenses are 'so antagonistic that they are mutually exclusive,' " *United States v. Peveto,* 881 F.2d 844, 857 (10th Cir.) (citations omitted), *cert. denied,* —— U.S. ——, 110 S.Ct. 348, 107 L.Ed.2d 336 (1989), or when the evidence admissible against only one defendant is so disproportionately great that it would redound to the detriment of the defendant against whom it is not admissible. *Lane,* 883 F.2d at 1499.

■ The court declines to sever these cases at this time. If unfair prejudice to any defendant becomes evident from the theories that counsel intend to present, or from a disparity in the weight of the evidence, the court will exercise its discretion to sever at the appropriate time. *See Peveto,* 881 F.2d at 857 (citing *Schaffer v. United States,* 362 U.S. 511, 516, 80 S.Ct. 945, 948, 4 L.Ed.2d 921 (1960)).

IT IS BY THE COURT THEREFORE ORDERED that defendants' motions to suppress (Docs. 48, 51, 53) be denied.

IT IS FURTHER ORDERED that defendants' motions to sever (Docs. 54, 51, 50) be denied.

---

vestigative resource does not transform this system into reliable information in support of a probable cause inquiry, and it appears advisable to attempt to ascertain the circumstances sur-

rounding the computer report. For these reasons, the court has given little weight to the reference to the N.A.D.D.I.S. report.